COMMONWEALTH *vs.* STEVEN J. ADAMS.

Essex. September 11, 1995. - November 9, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal,* Required finding, Retroactivity of judicial holding, Instructions to jury, Failure to make objection. *Motor Vehicle,* Operating under the influence, License to operate. *Constitutional Law,* Self-incrimination, Admissions and confessions. *Evidence,* Blood alcohol test.

At the trial of complaints charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor and operating a motor vehicle after suspension of his license to operate, the evidence, including an admission by the defendant, was sufficient to warrant a finding by the jury that the defendant was the operator of a certain motor vehicle that had been involved in an accident. [290-292]

Where a complaint for operating a motor vehicle while under the influence of intoxicating liquor was tried over two years after *Opinion of the Justices,* 412 Mass. 1201 (1992), was submitted to the Legislature, the defendant was not entitled to the benefit of retroactive application of the holding of *Commonwealth* v. *Zevitas,* 418 Mass. 677 (1994), with respect to the issue of the constitutionality of the judge's instruction to the jury pursuant to G. L. c. 90, § 24 (1) (*e*), to which the defendant did not object at trial. [292-294]

COMPLAINT received and sworn to in the Lynn Division of the District Court Department on February 15, 1992.

On transfer to the jury session of the Peabody Division, the case was heard by *Robert E. Hayes,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Douglas J. Beaton* for the defendant.

*S. Jane Haggerty,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. The defendant, Steven J. Adams, was charged by complaint with operating a motor vehicle while

under the influence of intoxicating liquor, G. L. c. 90, § 24 (1) (*a*) (1) (1994 ed.), and operating a motor vehicle after suspension of his license to operate. G. L. c. 90, § 23 (1994 ed.). The defendant's motion for a required finding of not guilty on both charges, Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979), filed at the close of the Commonwealth's case and renewed at the close of all the evidence, was denied, and a jury in the District Court convicted the defendant of both offenses. The defendant has appealed, and we allowed his application for direct appellate review. The defendant, who is represented by new counsel on appeal, contends (1) that his motion for a required finding of not guilty should have been allowed at the close of the Commonwealth's case, and, if unsuccessful on this point, (2) that the constitutional prohibition announced in *Commonwealth* v. *Zevitas*, 418 Mass. 677, 683 (1994), against instructing a jury on the availability of blood alcohol testing, when there is no evidence of such testing presented at trial, must be applied retroactively to his case, requiring a new trial. We reject both arguments and affirm the defendant's convictions.

The charges arose as the result of an accident that occurred around 11:30 P.M. on February 14, 1992, when a Chevrolet Corvette automobile driven by Gary Abate collided with a Nissan Sentra automobile on the Lynn Fells Parkway in Saugus. State Trooper James Walsh arrived at the scene about ten minutes after the accident had occurred and conducted an investigation. As a result of his investigation, which included the administration of four field sobriety tests to the defendant, Trooper Walsh concluded that the defendant had been operating the Nissan Sentra while under the influence of intoxicating liquor. At the State police barracks Walsh learned that the defendant's license to operate had been suspended.

1. The defendant argues that the evidence presented by the Commonwealth was insufficient, as matter of law, to warrant a finding by the jury that he was the operator of the Nissan Sentra involved in the accident. The test governing the required finding issue is the familiar one stated in *Common-*

*wealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), and, in satisfying that test, the Commonwealth may rely on reasonable inferences drawn from circumstantial evidence. *Commonwealth* v. *Marquetty*, 416 Mass. 445, 452-453 (1993).

Trooper Walsh testified that the defendant had told him at the scene of the accident that he had been driving the Nissan Sentra. The admission of operation by the defendant would not be enough to warrant a finding by the jury on the element of operation without some corroborative evidence that he was the driver of the Nissan Sentra. See *Commonwealth* v. *Leonard*, 401 Mass. 470, 473 (1988), quoting *Commonwealth* v. *Forde*, 392 Mass. 453, 458 (1984) (corroborative evidence needed in an operating while under the influence prosecution to support defendant's admission of operation to investigating police officers when the issue of operation is contested; that evidence would be "some evidence, besides the [admission] . . . that the crime was real and not imaginary"). See also *Commonwealth* v. *Costello*, 411 Mass. 371, 374-375 (1991).

Adequate corroboration was furnished in the form of a statement by the operator of the Corvette, Gary Abate, that the accident had been caused by the manner in which the defendant operated the Nissan Sentra. Abate did not testify, but his identification of the defendant as the operator came in through testimony by Trooper Walsh without objection or limitation and, as a result, was received for its full probative value. See *Commonwealth* v. *Errington*, 390 Mass. 875, 881-882 (1984). Additional corroboration was provided by testimony which placed both drivers outside of their respective vehicles when Trooper Walsh arrived; in the explanation given by the defendant about how the accident occurred; in the fact that the defendant was asked his driver's license number at the scene and provided a number which corresponded with the number on the suspension record; and in the failure of bystanders at the accident scene to dispute the operators' identities when the investigating officer clearly was treating Abate and the defendant as the operators of the two vehicles involved in the accident. The fact that there were

other persons present at the scene, unsupported by evidence tending to suggest that someone other than the defendant was operating the Nissan Sentra, cannot serve to undermine the probative value of the corroborative evidence previously discussed. Contrast *Commonwealth* v. *Leonard, supra* at 472 (at scene, defendant and his wife were observed struggling over keys; at trial, defendant's estranged wife testified that she was driving). There was enough to support the defendant's admission, and, as a result, to warrant the jury finding that he had been driving the Nissan Sentra.

2. There was no evidence that the defendant had the level of his blood alcohol tested. At the conclusion of the evidence, the judge instructed the jury as required by G. L. c. 90, § 24 (1) (*e*) (1994 ed.).[1] The defendant's trial counsel made no objection to the instruction. The instruction was held in *Commonwealth* v. *Zevitas*, 418 Mass. 677, 683 (1994), to violate the self-incrimination provision of art. 12 of the Declaration of Rights of the Massachusetts Constitution. The *Zevitas* decision was released on September 23, 1994. This case was tried in May, 1994. The defendant argues that the *Zevitas* decision should be applied retroactively, and that, under the *Zevitas* rule, the instruction constituted error which cannot be found to be harmless.

---

[1]General Laws c. 90, § 24 (1) (*e*) (1994 ed.), reads, in pertinent part, as follows:

"When there is no evidence presented at a civil or criminal proceeding of the percentage, by weight, of alcohol in the defendant's blood, the presiding judge at a trial before a jury shall include in his instructions to the jury a statement of an arresting officer's responsibilities upon arrest of a person suspected to be operating a motor vehicle under the influence of alcohol and a statement that a blood alcohol test may only be administered with a person's consent; that a person has a legal right to take or not take such a test; that there may be a number of reasons why a person would or would not take such a test; that there may be a number of reasons why such test was not administered; that there shall be no speculation as to the reason for the absence of the test and no inference can be drawn from the fact that there was no evidence of a blood alcohol test; and that a finding of guilty or not guilty must be based solely on the evidence that was presented in the case."

"Retroactive application of a rule of criminal law is indicated if (1) a case is on direct appeal or as to which time for direct appeal has not expired when the new rule is announced, and (2) the issue was preserved at trial." *Commonwealth* v. *Libran*, 405 Mass. 634, 645 (1989), quoting *Commonwealth* v. *Bellamy*, 391 Mass. 511, 515 (1984). See also *Commonwealth* v. *Figueroa*, 413 Mass. 193, 202 (1992), and cases cited. The defendant, as has been mentioned, made no objection to the instruction at trial, but argues that one was not necessary because the *Zevitas* ruling is constitutionally based and the constitutional theory "was [not] sufficiently developed at the time of [his] trial . . . to afford [him] a genuine opportunity to raise his claim." *DeJoinville* v. *Commonwealth*, 381 Mass. 246, 248 (1980).

What we have said in *Commonwealth* v. *D'Agostino, ante* 281 (1995), disposes of this contention. The defendant's case was tried over two years after *Opinion of the Justices*, 412 Mass. 1201 (1992), was submitted to the Legislature. In that opinion, the Justices considered proposed legislation which provided that, in a criminal case, a defendant's refusal to submit to a blood alcohol test could be admitted in evidence. The Justices advised the Senate that the legislation, if enacted, would violate the self-incrimination provision of art. 12. The *Zevitas* decision, *supra* at 682-683, makes abundantly clear that its holding is grounded in the earlier analysis provided in the *Opinion of the Justices, supra*, as to the application of art. 12 to a defendant's decision to forgo a blood alcohol test. As was said in the *Zevitas* decision, *id.* at 683, with respect to the constitutionality of the instruction required by G. L. c. 90, § 24 (1) (*e*), "the issue in this case for all practical purposes is the same issue that the Justices considered in *Opinion of the Justices, supra*, and the answer is the same, that is, that § 24 (1) (*e*) unconstitutionally compels an accused to furnish evidence against himself or herself." See *Commonwealth* v. *Madigan*, 38 Mass. App. Ct. 965, 966 (1995) ("it is apparent from the *Zevitas* decision, 418 Mass. at 683, that the court regarded its ruling as a simple reaffirmation of the view they had expressed two years

earlier [in *Opinion of the Justices*]"). We reject the defendant's arguments that *Opinion of the Justices* should not be considered as an appropriate or clear expression of the law for purposes of deciding whether the ruling in the *Zevitas* decision had been sufficiently foreshadowed so as to require his trial counsel to make an objection. See *Commonwealth* v. *D'Agostino, supra* (relying on *Opinion of the Justices, supra,* defendant contended that instruction mandated by G. L. c. 90, § 24 [1] [*e*], violated privilege against self-incrimination). The defendant is not entitled to the benefit of the so-called "clairvoyance exception" to the objection requirement, and the lack of objection at trial to the instruction precludes him from obtaining retroactive application of the *Zevitas* ruling.[2]

*Judgments affirmed.*

---

[2]The failure of the defendant's trial counsel to object to the instruction does not necessarily mean that trial counsel was unaware of *Opinion of the Justices,* 412 Mass. 1201 (1992). Trial counsel may have made the tactical decision that the defendant would benefit from a reminder to the jury that they should draw no inference against the defendant based on the absence of evidence of the results of a breathalyzer or blood test. Finally, we note that no argument is made in the defendant's briefs on appeal that the giving of the instruction created a substantial risk of a miscarriage of justice.