## Commonwealth *vs.* Craig O. Cromwell.

No. 00-P-1372.

Suffolk. December 6, 2001. - November 14, 2002.

Present: Jacobs, Kantrowitz, & Kafker, JJ.

*Motor Vehicle,* Operating under the influence, Operation. *Practice, Criminal,* Required finding, Restitution. *Restitution.*

At the trial of a criminal complaint charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor, the evidence was sufficient to prove that the defendant operated the vehicle, where the vehicle appeared to have recently been in the accident in question, the defendant was the registered owner of the vehicle and acknowledged that it was his car, the defendant was at the scene of the collision and acting in a manner similar to people involved in accidents, the defendant handed over his license and registration and cooperated with field sobriety tests at the request of police officers, the bystanders to the accident did not react when the police treated the defendant as the operator, and there was no evidence tending to suggest that anyone else was operating the vehicle. [438-440]

At the trial of a criminal complaint charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor, the judge did not abuse her discretion in permitting the victim to testify about the injuries she received when the defendant's vehicle hit hers, where the testimony was factual, brief, and not detailed, and where evidence of the injuries was probative of the nature of the collision and the victim's condition, thereby permitting the jury to evaluate whether the injuries interfered with the victim's claimed observation of the defendant's vehicle. [440-441]

At the sentencing phase of the trial of a criminal complaint charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor, the judge acted within her discretion in ordering the defendant to pay restitution to the victim for damages arising from the accident involving his vehicle and hers; moreover, because "economic loss" is synonymous with "financial loss," and is not limited to the market value of destroyed property, the judge properly ordered that the defendant pay the amount outstanding on the victim's car loan, rather than the market value of the vehicle at the time of the accident less any insurance payments. [441-443]

Complaint received and sworn to in the Dorchester Division of the District Court Department on January 27, 1997.

The case was tried before *Mary Ann Driscoll,* J.

*Christopher Paul Roberts* for the defendant.

*Alex G. Philipson,* Assistant District Attorney, for the Commonwealth.

JACOBS, J. Convicted by a District Court jury of operating a motor vehicle while under the influence of intoxicating liquor, G. L. c. 90, § 24, the defendant appeals, arguing that (1) his motion for a required finding of not guilty should have been allowed; (2) evidence of injuries sustained by a motorist whose car was struck by the defendant improperly was admitted; and (3) a restitution order improperly was entered against him. We affirm the conviction and the order for restitution.[1]

Following the collision of a car registered to the defendant with another car in the Dorchester section of Boston in the early afternoon of January 25, 1997, several police officers, State troopers, and emergency medical personnel arrived at the scene. Loralean Brown, the driver of the other car, and three State troopers provided testimony describing the collision and the aftermath as follows. When making a left turn from Gallivan Boulevard to Adams Street, Brown's car was struck from behind with "intense" force. The impact pushed her car into Adams Street, spun it around, and caused it to knock down a signal light on a traffic island. Hearing the "screeching" of tires, Brown saw a gold-colored Lincoln automobile speed by. She shouted to bystanders, "[G]et that guy, get that guy. That's the guy that hit me. He's trying to get away." Brown saw only the middle and the back of the car. She was injured and soon taken from the scene by ambulance.[2]

State Trooper Deborah Hennessey testified that as soon as she arrived at the scene, a Boston police officer directed the defendant to her.[3] Upon request, the defendant produced his driver's license and registration. Trooper Hennessey noted that

---

[1]The defendant received a two-year jail sentence, one year to be served, with the balance suspended for two years and with probation terms, including restitution, imposed for the period of suspension. The restitution order was stayed by a single justice of this court.

[2]A two year old goddaughter of the victim was a passenger and was not physically injured.

[3]The record does not indicate why State troopers were involved and eventually arrested the defendant rather than Boston police. Most responses of the

the defendant's eyes were glassy, that he had a very strong odor of alcohol about him, that he was "shaking all over," and that he was very nervous. She testified, without objection, that she offered him a seat in a nearby police cruiser "because he was shaking all over, like most people who are involved in accidents. He was very shaken up by the accident."

Two other troopers who were dispatched to the scene initially observed some fifteen or twenty civilians in the area. One of the troopers, John Slattery, testified that he performed a patfrisk of the defendant; that the defendant's eyes were bloodshot; and that he had slurred speech, seemed "jittery," and had a strong odor of alcohol about him. When given the defendant's license and registration by another trooper, Trooper Slattery matched the license picture with the defendant, and noted that the registration was for a gold 1987 Lincoln Town Car. With the defendant's permission, Trooper Slattery conducted field sobriety tests, which the defendant failed. Slattery then arrested the defendant. At some point the trooper asked the defendant where his car was parked. The defendant directed him to a gold Lincoln Town Car that matched the registration and that was parked about thirty yards away. The troopers observed heavy and fresh damage to the right front passenger side of the Lincoln, as well as substantial damage to the right rear passenger side and trunk area of Brown's car.

1. *The issue of operation.* Because no one saw him driving and he made no admission of operation, the defendant claims he was entitled to a required finding of not guilty as matter of law.[4] The absence of such direct evidence, however, is not dispositive, as "a conviction may rest entirely on circumstantial evidence." *Commonwealth* v. *Woods*, 414 Mass. 343, 354, cert.

---

troopers to questions asking why they talked to the defendant were cut off by objections.

[4] There was ample evidence from the observations of the troopers and the testimony describing the defendant's performance of the field sobriety tests to support a conclusion that the defendant was under the influence of alcohol. The defendant does not raise any issue whether his "shaking all over" was a factor in his performance of the field sobriety tests. Nor does he argue that the tests were improperly administered, and he does not contest the conclusion drawn from them by the police. At trial, the Commonwealth and the defendant stipulated that the public way element of G. L. c. 90, § 24, had been met.

denied, 510 U.S. 815 (1993). *Commonwealth* v. *Walter*, 10 Mass. App. Ct. 255, 257 (1980).

The relevant circumstantial evidence of the defendant's operation was as follows: (1) The Lincoln appeared to have recently collided with Brown's car. (2) The defendant was the registered owner of the Lincoln, and he acknowledged that it was his car. See *Commonwealth* v. *Deramo*, 436 Mass. 40, 43 (2002) (noting that in applying the reasonable suspicion standard to investigative stops, "courts have held that the police may, in the absence of any contrary evidence, reasonably conclude that a vehicle is likely being driven by its registered owner"). (3) The defendant was at the scene of the collision and "he was shaking all over, like most people who are involved in accidents." (4) Upon request, the defendant handed over his license and registration and cooperated with the field sobriety tests. See *Commonwealth* v. *O'Connor*, 420 Mass. 630, 632 (1995) ("finder of fact could infer operation from the facts and circumstances surrounding the accident and from the defendant's cooperation with the field sobriety tests"). (5) The lack of bystander reaction to the police treating the defendant as the operator by requesting his license and registration and subjecting him to a pat frisk and field sobriety tests. See *Commonwealth* v. *Manning*, 41 Mass. App. Ct. 18, 22 (1996). (6) The absence of evidence tending to suggest that someone other than the defendant was operating the Lincoln. See *Commonwealth* v. *Adams*, 421 Mass. 289, 291-292 (1995).[5]

This evidence, viewed as a whole and in the light most favorable to the Commonwealth, reasonably supports an inference that the defendant was the operator. That any individual "item

---

[5]We recognize that *Commonwealth* v. *O'Connor, supra*, and *Commonwealth* v. *Manning, supra*, involve the corroboration rule for confessions, a rule that may be less demanding than the standard established in *Commonwealth* v. *Latimore*, 378 Mass 671, 676-677 (1979), see *Commonwealth* v. *Costello*, 411 Mass. 371, 374 (1991). We believe that circumstantial evidence sufficient to constitute corroboration may also serve in combination with the other circumstantial evidence in the case to support "[a] web of convincing proof . . . made up of inferences that are probable, not necessary." *Commonwealth* v. *Hilton*, 398 Mass. 63, 67 (1986), quoting from *Commonwealth* v. *Best*, 381 Mass. 472, 483 (1980). Such combined evidence is sufficient to permit a reasonable person to fairly conclude that the defendant is guilty beyond a reasonable doubt.

of evidence reasonably supporting operation may not be compelling does not render it fatally ambiguous or unduly speculative, especially when considered with other equally reasonable inferences tending to the same conclusion." *Commonwealth* v. *Manning, supra.* See *Commonwealth* v. *Wood,* 261 Mass. 458, 459 (1927); *Commonwealth* v. *Hilton,* 398 Mass. 63, 66-67 (1986), quoting from *Commonwealth* v. *Best,* 381 Mass. 472, 483 (1980) ("That the case against [the defendant] was 'circumstantial' in some sense of that dubious term does not suggest that the proof was insufficient").

"While it is not necessary to prove that the defendant had the exclusive opportunity to commit the crime[], . . . the evidence must be such as to convince a jury beyond a reasonable doubt that the defendant, and no one else, committed the offence[] charged" (citations omitted). *Commonwealth* v. *Shea,* 324 Mass. 710, 713 (1949). The evidence here was sufficient to comply with the requirements of *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979), and the defendant's motion for a required finding of not guilty properly was denied.

2. *Alleged erroneous admission of evidence of victim's injuries.* Before Brown testified at trial, the defendant unsuccessfully sought to exclude testimony about her injuries. He argues it was reversible error to admit that evidence because it served no purpose other than to appeal to the jury's sympathy.[6] The injury testimony was factual, brief, and not detailed, and presented a more complete "picture . . . of the events surrounding the incident itself." *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 269-270 (1982). The judge reasonably could determine that the evidence of the injuries was probative of the nature of the collision and of Brown's condition. Such evidence

---

[6]The defendant's objections were based primarily on the failure to produce Brown's medical record and secondarily on its prejudicial effect. At the conclusion of a brief voir dire, the judge noted for the record the defendant's objection. The victim described to the jury, without further objection, that she was bleeding from her head, and the steps taken by an emergency medical technician and firefighters in preparing her to be taken away in an ambulance. She stated, also without further objection, that she had surgery on her left knee and had face and neck injuries, requiring some stitches. Over objection, she stated she had been out of work six weeks. On cross-examination defense counsel inquired if the victim expected to obtain money through a civil claim against the defendant, and raised this point in closing argument.

permitted the jury to evaluate whether the injuries interfered with Brown's claimed observation of the Lincoln. Moreover, the injuries tended to corroborate the evidence that the impact occurred with such force as to support a reasonable inference that the collision was not a mere accident, and, among other plausible explanations, that the driver of the Lincoln may have been impaired. The judge did not abuse her discretion in determining that the probative value of the evidence outweighed any prejudice to the defendant. We conclude there was no palpable error, and that the matter was well within the judge's discretion. *Commonwealth* v. *Woods,* 414 Mass. at 355.

The defendant also complains that the judge did not give any limiting instruction. She was not required on her own motion to give a contemporaneous limiting instruction to advise the jury not to decide the case on the basis of sympathy for Brown. *Commonwealth* v. *Roberts,* 378 Mass. 116, 126 (1979) ("Ordinarily, judges are not required, sua sponte, to instruct juries as to the purposes for which evidence is offered at trial"). It is defense counsel's duty to make such a request, and none was made here. In any event, the judge in her final charge instructed the jurors that they were not to be swayed by prejudice or sympathy.

3. *Restitution.* During the sentencing phase of the case, the prosecutor indicated that the Brown car had been "totaled" in the collision, and asked for a restitution order in the amount of $2,700. As part of her sworn, oral victim impact statement, see G. L. c. 258B, § 3(*p*), Brown essentially confirmed that request. The judge scheduled a restitution hearing, indicating that "appropriate documentation [should] be provided at that time." At a restitution hearing over a month later before the same judge, no testimony was offered, but the prosecutor and defense counsel argued, and three documents were admitted as exhibits. The documents established that a bank had made a loan of approximately $14,000 to Brown with respect to the purchase of her car; the bank had received over $12,000 from Brown's insurance company; and that the bank was seeking payment of the balance of the loan. The judge ordered restitution in the amount of $2,407.04, the amount of that balance.

In light of the evidence of how the collision occurred and the

location of the damage to the vehicles, it was not error for the judge to treat Brown as a victim of the defendant's impaired operation, even if the charged crime did not require injury to be established. Contrary to the defendant's claim, there was sufficient evidence of his responsibility for causing damage to Brown's car to support the judge's order of restitution. See *Commonwealth* v. *McIntyre*, 436 Mass. 829, 835 (2002) (holding that the "scope of restitution is limited to 'loss or damage [that] is causally connected to the offense and bears a significant relationship to the offense.' Furthermore, 'we look to the underlying facts of the charged offense, not the name of the crime [of which the defendant was convicted . . .]' " [citations omitted]). "Victims are entitled to request restitution and judges are empowered to impose it pursuant to G. L. c. 258B, § 3(*o*). The purpose of restitution . . . is to compensate the injured party for losses incurred as a result of the defendant's criminal conduct" (footnote omitted). *Commonwealth* v. *Rotonda*, 434 Mass. 211, 221 (2001). The judge's decision to order restitution was well within her discretion. *Commonwealth* v. *Nawn*, 394 Mass. 1, 8 (1985).

The defendant asserts that at most he should be responsible only for the fair market value of the Brown car at the time of the collision. He further assumes that he should have the benefit of the insurance payment and that the restitution order, therefore, should be vacated.[7] We disagree.

"The payment of restitution is limited to the economic losses caused by the conduct of the defendant and documented by the victim." *Commonwealth* v. *Rotonda, supra.* The term "economic loss" has been interpreted by this court as synonymous with "financial loss," and as not limited to the "market value" of destroyed property. *Commonwealth* v. *Hastings*, 53 Mass. App. Ct. 41, 43 (2001). No argument was made at the restitution

---

[7]The defendant's claim of lack of opportunity to cross-examine Brown is without merit in view of his failure to summons her or seek her attendance at the restitution hearing, or to request a continuance after the prosecutor established damages on the basis of the documentary evidence and Brown's previous sworn statement. In the circumstances, the defendant cannot complain that he was not afforded a meaningful opportunity to challenge the amount of restitution requested and ordered. Compare *Commonwealth* v. *Nawn, supra* at 6-9; *Commonwealth* v. *Yeshulas*, 51 Mass. App. Ct. 486, 492-493 (2001).

hearing (nor did the defendant seek an opportunity to establish) that the bank loan may not have related solely to the purchase of the Brown vehicle, or that the amount of the balance may have reflected nonpayment of the installments, or that the amount requested as restitution did not accurately reflect the economic loss suffered by Brown. In *Commonwealth* v. *Rotonda, supra* at 221, the court indicated that "such items as medical expenses, court-related travel expenses, property loss and damage, lost pay, or even lost paid vacation days used to attend court proceedings might all be included in an appropriately documented restitution order . . . ." This expansive approach in criminal matters[8] is fully supported by the Legislature's mandate that victims of crime be afforded several basic and fundamental rights, including the right of restitution, "to the greatest extent possible." G. L. c. 258B, § 3. In the circumstances, we conclude that the Commonwealth met its burden of proving by a preponderance of the evidence at a reasonable and fair proceeding, *Commonwealth* v. *Nawn, supra* at 6-7, that Brown's economic losses included the $2,407.04 balance due the bank.

> *Judgment of conviction and*
> *order for restitution affirmed.*

---

[8]In civil cases, restitution may be more narrowly confined. See Nolan & Sartorio, Tort Law § 248 (2d ed. 1989) ("If there is a total loss, the plaintiff is entitled to the fair value of the property at the time of the loss . . .").