COMMONWEALTH *vs.* CONG DUC LE
(and a companion case[1]).

Suffolk. January 3, 2005. - June 2, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Identification. Evidence,* Identification, Testimony of third party respecting identification, Hearsay, Prior inconsistent statement, Cross-examination. *Constitutional Law,* Confrontation of witnesses.

This court concluded that testimony by a person other than an identifying witness concerning an extrajudicial identification is admissible at a criminal trial for its probative worth when the identifying witness does not acknowledge the identification, modifying the rule previously announced in *Commonwealth* v. *Daye,* 393 Mass. 55, 60-63 (1984), that such evidence could be used only for impeachment; further, this court saw no unfairness in applying the new rule retroactively to permit at a criminal trial the admission in evidence, for substantive purposes, of a police detective's testimony concerning a pretrial identification of the defendants after the identifying witness, at trial, denied having made the identification, in circumstances where the defendants had an ample opportunity to cross-examine the identifying witness on the subject. [435-442]

Where counsel for criminal defendants did not request that various precautions be taken at pretrial court proceedings to avoid suggestive confrontations between an identifying witness and the defendants, the defendants could not later complain that the witness's in-court identification at trial was impermissibly tainted by exposure during the prior proceedings. [442-443]

COMPLAINTS received and sworn to in the Boston Municipal Court Department on May 4, 2001.

Pretrial motions to suppress evidence and to dismiss were heard by *John T. Lu,* J., and the cases were tried before *Sally A. Kelly,* J.

After review by the Appeals Court, 61 Mass. App. Ct. 1105 (2004), the Supreme Judicial Court granted leave to obtain further appellate review.

*Christopher Pohl,* Assistant District Attorney, for the Commonwealth.

[1]Commonwealth *vs.* Tung Ouoc Huynh.

*Susan F. Damiano* for Tung Ouoc Huynh.

*Victor H. Ascolillo* for Cong Duc Le.

SOSMAN, J. The defendants, Cong Duc Le and Tung Ouoc Huynh, were convicted of assault and battery in the beating of Khanh Luong.[2] On appeal, they contend that the trial judge erroneously allowed a detective's testimony concerning a pretrial identification to be used as substantive evidence (and not merely as impeachment) when the identifying witness denied having made such an identification. See *Commonwealth* v. *Daye*, 393 Mass. 55, 60-63 (1984) (*Daye*). They also contend that the victim, Luong, should not have been allowed to make an in-court identification, as he had allegedly been exposed to suggestive identification procedures at earlier court proceedings. In an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court reversed the convictions on the ground that the substantive use of the prior identification violated the limitations prescribed in *Daye. Commonwealth* v. *Cong Duc Le*, 61 Mass. App. Ct. 1105 (2004). We granted the Commonwealth's application for further appellate review. The Commonwealth asks that we modify the rule in *Daye* to allow substantive use of pretrial identification evidence, even if the witness testifies that he or she did not make such an identification, consistent with Federal decisions that have allowed substantive use of such identification evidence under Fed. R. Evid. 801 (d) (1) (C). This court has approved of the identically worded Proposed Mass. R. Evid. 801 (d) (1) (C), see *Commonwealth* v. *Weichell*, 390 Mass. 62, 71-72 (1983), cert. denied, 465 U.S. 1032 (1984), and *Daye* no longer comports with Federal jurisprudence applying that same rule. We agree with the Commonwealth that we should adopt the modern interpretation of the rule, and we therefore overrule that portion of *Daye*.[3] We also find no error in admitting the in-court identification made by Luong. We therefore affirm the convictions.

---

[2]The defendants were acquitted on charges of larceny. Charges of assault and battery, and assault with intent to rob, against another victim, James Nguyen, were dismissed.

[3]In *Commonwealth* v. *Daye*, 393 Mass. 55, 65-75 (1984) (*Daye*), the court also addressed the substantive use of prior inconsistent statements made under oath. See Proposed Mass. R. Evid. 801 (d) (1) (A). That aspect of *Daye* is unaffected by our decision today. See *Commonwealth* v. *Clements*, 436 Mass.

1. *Facts.* On April 29, 2001, Khanh Luong and James Nguyen, along with other acquaintances, were at a nightclub in Boston. Luong and Nguyen left the club together at the 2 A.M. closing time, and were walking toward their vehicle. Many other patrons were also leaving the club at that time, and a large number of people were in the area just outside the club. Luong suddenly noticed that Nguyen was no longer beside him, and turned back to see Nguyen with two other men, the defendants. When Luong walked back to see what was going on, he heard Le complain of some prior insult ("Your boy punked me"), whereupon the defendants ordered both Nguyen and Luong to their knees. When they did not comply, Huynh punched Luong and Le struck Nguyen. Luong fell to the ground, and felt kicks and punches "coming from everywhere." Luong could not say how many people were striking him while he was on the ground, but had given statements to the police estimating that it was as many as ten persons. Luong heard someone say, "Grab his money," and felt a hand reach into his back pocket. Someone shouted that the police were coming, and the attack ceased. Luong left the area without waiting for the police. He went to a hospital later that morning, suffering significant injuries to his face and his left eye.

After being seen at the hospital, Luong went to the police to report the incident. A few days later, Detective Mario Modica interviewed Luong and Nguyen at the police station. Modica prepared an array of twelve photographs that contained a photograph of Huynh. Luong was the first to view the array. After viewing the array for a few minutes, Luong had not made any identification. He told Modica, "I can't be sure." Modica asked him to stop and to step outside. Modica observed that Luong's left eye was swollen shut and tearing up, and that he appeared to be having difficulty with that eye.[4]

Modica next showed the array to Nguyen. Modica testified

190, 192-193 (2002); *Commonwealth* v. *Sineiro*, 432 Mass. 735, 741-744 (2000).

[4]At trial, Luong testified that he had seen some people he recognized in that array, and thought that he had seen a photograph of Le in the array. However, Le's photograph was not in that array. Luong also testified that, at the time he viewed the array, he could see out of his right eye, but could not see out of his left eye.

that Nguyen picked out Huynh's photograph from the array, identifying Huynh as the one who had attacked Luong. Nguyen put his initials on Huynh's photograph.[5] Modica then had Nguyen review a computerized display of ninety photographs meeting Nguyen's description of the second assailant. Nguyen selected the photograph of Le and, according to Modica, identified Le as the one who had struck him and knocked him to the ground.

At trial, Luong made an in-court identification of Huynh as the man who had attacked him and an in-court identification of Le as the man who had attacked Nguyen at the same time.[6] Luong testified that he had known Huynh, and that he had seen him in various social settings approximately twenty times prior to the attack. He also knew Le, having been introduced to him by a friend they had in common. He had seen Le some four or five times prior to the incident.

Nguyen testified that as he and Luong were leaving the club, he heard someone call his name. He turned around, saw the defendants, and began speaking with Le.[7] Luong joined them. Nguyen's attention was drawn to his left, where he saw "a big fight." Luong, who had been right beside him, was gone, but Nguyen did not know where. Nguyen was then struck from behind and fell to the ground. He claimed that he did not see who hit him, nor did he see who had beaten Luong. He denied that either defendant had ordered anyone to get to their knees, and had not seen either defendant strike Luong. He met up with Luong, and saw his injuries, after the attack ended. Nguyen acknowledged that he had gone to the police station with Luong, and had understood at the time that their reason for going to the station was because Luong wanted to press charges

---

[5] Modica also made a notation on the bottom of the array, referencing Nguyen's identification of Huynh "as the suspect that punched victim Khanh Luong." Nguyen testified that the array was blank at the time he placed his initials on the photograph, i.e., his initials did not signal any confirmation of what Modica later wrote on the array.

[6] There was no direct evidence that Le struck Luong. The Commonwealth argued that Le acted as a joint venturer in Huynh's attack on Luong.

[7] Nguyen also knew both defendants, having been friends with Huynh and his brothers for five or six years, and, more recently, seeing Huynh at clubs they both frequented. He had seen Le on one or two prior occasions.

against "whoever beat him up." He agreed that he had selected Huynh's photograph from the array and Le's photograph from the computerized display, but claimed that he had only identified them as people he had seen outside the club that night. He denied that he had identified them as the actual assailants.

Huynh testified that he had been at the club on the night of the incident, and he remembered seeing both Nguyen and Luong as they were leaving. He recalled that a fight broke out in the middle of the street, but he could not see who was being attacked. The fight ended after approximately two minutes, and the participants fled. He denied that he had had any involvement, and denied that he had struck Luong.

2. *Discussion.* a. *Evidence of prior identification.* Counsel for both defendants objected to Modica's testimony concerning Nguyen's alleged identification of the defendants as the perpetrators, and later requested that the judge give an instruction limiting that testimony to impeachment of Nguyen by means of a prior inconsistent statement. The judge declined to give any limiting instruction. On appeal, the defendants contend that allowing the prior identification to be introduced as substantive evidence violated the restrictions placed on identification evidence in *Daye.* The Commonwealth argues that the facts of this case are distinguishable from *Daye,* or, in the alternative, that we should modify *Daye* to comport with modern precedent interpreting Fed. R. Evid. 801 (d) (1) (C).

In *Daye,* a police officer testified that two eyewitnesses to a shooting had viewed an array, selected the defendant's photograph, and identified it as a photograph of the gunman. *Id.* at 57. However, one of the witnesses testified at trial that he had selected one or two photographs of persons who had been at the scene, that he did not know what the gunman looked like, and that he had not identified any photograph as that of the gunman. *Id.* at 58. The other witness testified that he had selected a few photographs of someone he "thought was the shooter," but he was not asked to identify the photographs he had chosen, and testified that the gunman was not in the court room. *Id.* at 59.

The court recognized that evidence of a prior identification by a witness was admissible as probative evidence of identifica-

tion in various circumstances, including circumstances "[w]here a witness does not identify a defendant at trial, but acknowledges making an extrajudicial identification of the defendant . . . ." *Id.* at 60, citing *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 409 (1978). The issue presented, however, was "whether testimony by a person other than the identifying witness concerning an extrajudicial identification is admissible for its probative worth when the identifying witness does not acknowledge the identification or does not explicitly state that he identified the defendant." *Daye, supra.* On that issue, the court ruled that the officer's testimony concerning the prior identifications of the defendant could be used only for impeachment, not as substantive evidence of identification. *Id.* at 61. "[T]estimony by a nonidentifying witness *that differs in material respects* from the testimony of the identifying witness concerning a particular extrajudicial identification . . . cannot be considered corroborative or probative and remains within the hearsay proscription" (emphasis added). *Id.* at 60 n.8.

The Commonwealth's attempt to distinguish the present case from *Daye* is unavailing. The fact that Nguyen testified that he selected two photographs does not qualify as "acknowledg-[ment]" of the identification described by Modica — Nguyen testified that he identified those photographs as people who were merely present, and denied that he identified them as the perpetrators. Nguyen is, in all respects, the equivalent of the witness in *Daye* who acknowledged selecting one or two photographs of persons he had seen at the scene, but denied identifying any of the photographs as that of the actual shooter. Modica's testimony that Nguyen identified Le as the one who had struck him and Huynh as the one who had struck Luong was testimony that "differ[ed] in material respects" from Nguyen's version of the prior identification. *Id.*

However, we find merit in the Commonwealth's contention that the limitations *Daye* placed on the use of extrajudicial identification evidence should be modified in light of subsequent jurisprudence on this subject. Proposed Mass. R. Evid. 801 (d) (1) (C) provides that a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . .

one of identification of a person [made] after perceiving him." In *Daye, supra* at 61 n.9, the court acknowledged that Proposed Mass. R. Evid. 801 (d) (1) (C) did not, by its express terms, "preclude substantive use of extrinsic evidence of an extrajudicial identification denied by the identifying witness," and that the rule may be read to say that such evidence is admissible for substantive purposes. However, at that time, concerns about a defendant's confrontation rights had been cited as a reason not to extend Fed. R. Evid. 801 (d) (1) (C) to situations where the identifying witness failed or refused to acknowledge the prior identification. See *United States* v. *Lewis*, 565 F.2d 1248, 1252 (2d Cir. 1977), cert. denied, 435 U.S. 973 (1978); 4 J. Weinstein & M. Berger, Evidence par. 801 (d) (1) (C) [01], at 801-130 - 801-132 (1981). These same concerns — and these same sources — were cited in *Daye* itself. *Daye, supra* at 61 n.9.

The argument that a literal reading of rule 801 (d) (1) (C) would violate the confrontation clause was later rejected by the United States Supreme Court. *United States* v. *Owens*, 484 U.S. 554, 559-563 (1988). There, the victim witness (who had suffered severe head injuries during the attack in question, resulting in significant memory loss) still had a memory of making a prior identification, but had no recollection of the basis for his identification, no recollection of even seeing the attacker, and no recollection of what had been said to him that might have made the prior identification of the defendant impermissibly suggestive. *Id.* at 556. Cross-examination efforts to refresh his recollection (including by means of hospital records indicating that the witness had at one point identified someone else as the perpetrator) were unavailing. *Id.* Despite these problems, the victim's prior identification of the defendant was admitted in evidence. *Id.* On appeal, the defendant claimed that the victim's memory loss was such that he had been denied an effective opportunity to cross-examine him on the subject of the identification, in violation of the confrontation clause and contrary to the requirement in rule 801 (d) (1) (C) that the witness be "subject to cross-examination concerning the statement" of prior identification. *Id.* at 561. The Court disagreed. As to the confrontation clause, all that was required was that the defendant have an opportunity to cross-examine the witness

— it did not guarantee a "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* at 559, quoting *Kentucky* v. *Stincer*, 482 U.S. 730, 739 (1987). As to the requirement under the rule that the witness be "subject to cross-examination concerning the statement" of identification, Fed. R. Evid. 801 (d) (1) (C), that requirement would be satisfied as long as the witness "is placed on the stand, under oath, and responds willingly to questions." *United States* v. *Owens, supra* at 561. The ability to cross-examine the witness might be undermined to the point of a denial of confrontation rights (or a failure to satisfy the rule) by such things as the judge's limiting the scope of cross-examination, or the witness's assertion of a privilege. *Id.* at 561-562. However, the witness's memory loss about prior events would not impermissibly undermine the opportunity to cross-examine the witness. *Id.* at 562. In light of *United States* v. *Owens, supra,* the substantive content of a witness's answers does not mean that the defense has been deprived of the opportunity to confront that witness, nor does it equate with the witness's not being "subject to cross-examination" for purposes of rule 801 (d) (1) (C).

Following *United States* v. *Owens, supra,* Federal courts have applied rule 801 (d) (1) (C) in a literal manner, and have allowed a witness who observed the prior identification to testify concerning that identification, even where the witness who allegedly made the identification denies or does not remember having made it. See *United States* v. *Lopez,* 271 F.3d 472, 484-485 (3d Cir. 2001), cert. denied, 535 U.S. 908, and cert. denied sub nom. *Navarro* v. *United States,* 535 U.S. 962 (2002) (officer permitted to testify to witness's prior identification pursuant to rule 801 [d] [1] [C] where witness "denied making any such statement to the police"); *United States* v. *Jarrad,* 754 F.2d 1451, 1456 (9th Cir.), cert. denied, 474 U.S. 830 (1985) (witness testified that she had been shown photographic array but denied selecting any photograph; rule 801 [d] [1] [C] permitted Federal agent to testify that witness had selected defendant's photograph and identified it as "similar to or reminded her of" perpetrator); *United States* v. *Kaquatosh,* 242 F. Supp. 2d 562, 563 (E.D. Wis. 2003) (evidence of prior identification may be introduced by third-party witness to identification even if

identifying witness is "unable to recall or explain the basis of" prior identification). See also *United States* v. *Baker*, 722 F.2d 343, 345, 347 n.8, 349 (7th Cir. 1983), cert. denied, 465 U.S. 1037 (1984) (Federal agent testified to witness's selection of defendant's photographs even though witness testified that she could not recall identifying defendant; allowing prior identification as substantive evidence did not violate confrontation clause or rule 801 [d] [1] [C]). State courts applying their version of rule 801 (d) (1) (C) have similarly extended it to circumstances where the identifying witness does not remember or denies making the prior identification. See *State* v. *Stokes*, 829 So. 2d 1009, 1010 (La. 2002); *State* v. *Grover*, 55 Wash. App. 252, 256-259 (1989).

Consistent with these developments, more recent editions of the same treatise relied on in *Daye, supra* at 61 n.9, explain that rule 801 (d) (1) (C) allows an observer of the identification process to testify concerning that identification, even if the identifying witness disclaims having made such an identification. 5 J. Weinstein & M. Berger, Weinstein's Federal Evidence § 801.23[1], at 801-40 (2d ed. 2003 & Supp. 2005) (prior identification is "admissible nonhearsay even if the witness disavows the earlier identification"); 4 J. Weinstein & M. Berger, Weinstein's Evidence par. 801 (d) (1) (C)[01], at 801-222 (1993) ("if at the trial the eyewitness fails to remember or denies that he made the identification, the previous statement of the eyewitness can be proved by the testimony of a person to whom the statement was made, and the statement can be given substantive effect"). In short, the precedent on which *Daye* was based has itself been modified, and has long since discarded the limitation on Proposed Mass. R. Evid. 801 (d) (1) (C) that *Daye* imposed.

In *Daye*, the court also expressed concern that where there is a dispute as to whether the prior identification was made, "the evidential value of the prior identification is almost completely dissipated." *Daye, supra* at 61, quoting *Commonwealth* v. *Swenson*, 368 Mass. 268, 273 n.3 (1975). In light of more recent experience under the Federal rule, that pessimistic assessment of the value of disputed prior identification evidence is no longer warranted. As with any other situation where the jury are

confronted with disputed testimony concerning identification, they can determine whose version to believe — the witness who claims not to remember or disavows the prior identification (including that witness's version of what transpired during the identification procedure), or the observer who testifies that the witness made a particular prior identification. We have allowed introduction of a prior identification as substantive evidence despite the identifying witness's emphatic testimony that the prior identification was made in error, leaving it to the jury to resolve the conflicting claims concerning that prior identification. See, e.g., *Commonwealth* v. *Clements*, 436 Mass. 190, 191-195 (2002) (witness insisted he had never known identity of shooter due to intoxication and poor lighting at scene, and had only identified defendant's photograph based on what he had heard from others and pressure from victim's family). And, as always, evidence of the prior identification will be considered along with all the other evidence that bears on the issue of the perpetrator's identity. The mere fact that the prior identification is disputed in some manner does not make it unhelpful to the jury in evaluating the over-all evidence as to whether the defendant on trial was the one who committed the charged offense.[8]

The legislative history of Fed. R. Evid. 801(d)(1)(C) confirms

_____

[8] Here, for example, the jury heard Luong's testimony identifying the defendants as the assailants, including evidence of Luong's prior exposure to the defendants that would form the basis for his alleged recognition of them. The jury also heard evidence that would tend to undermine the reliability of Luong's identification, including his inability to identify Huynh from the photographic array and his mistaken belief that he had seen a photograph of Le in the array. The jury then heard evidence addressing what significance they should attach to Luong's review of the array, given his visual impairment and his expressed desire to be "sure" before making an identification. The jury then heard Nguyen's version, confirming that the defendants were present at the scene, but explaining that he did not know who struck him and that he had not seen who struck Luong. The jury also heard from Nguyen that he had nevertheless selected photographs of the defendants while at the police station for the purpose of assisting Luong in prosecuting "whoever beat him up," and the jury could assess the credibility of Nguyen's assertion that his selecting and initialing the photographs of the defendants was only meant to identify them as having been "present" but uninvolved in the assault. In assessing and weighing that assortment of identification evidence, surely it was helpful to the jury to have heard Modica's version of what had transpired when Nguyen reviewed photographs at the station. The fact that Nguyen disagreed with

that one of the reasons for allowing substantive use of prior statements of identification was the concern that, by the time of trial, some witnesses have been subjected to various pressures that might affect their willingness to testify truthfully on the subject of identification. See Pub. L. No. 94-113, 89 Stat. 576 (Oct. 16, 1975), S. Rep. No. 199, 94th Cong., 1st Sess. 2 (1975) (prior identification "takes place before the defendant or some other party has had the opportunity, through bribe or threat, to influence the witness to change his mind"). Our own justification for the substantive use of prior identification evidence has similarly recognized that fear of reprisal may later cause a witness to claim an inability to make an identification at trial, or to disclaim ever having had any basis for the prior identification. See *Commonwealth* v. *Warren*, 403 Mass. 137, 141 (1988). A witness's testimony about the identification procedure itself — what the witness was asked to do, what selection (if any) the witness made, and what the witness said about that selection — is also susceptible to improper influences, and the purposes of rule 801 (d) (1) (C) ought not be circumvented by the simple expedient of disputing the results of the identification that was previously made. Such disputes can, along with the other disputes regarding recantation or claimed inability to make an identification, be resolved by the jury.

Moreover, the issue is not whether the jury will be allowed to hear this evidence — under *Daye*, evidence of the prior identification would still be admissible for purposes of impeachment. *Daye, supra* at 61. The sole issue is whether the jury should be given an instruction limiting the use of that evidence to impeachment. Prior identification evidence is of substantive value, even in the absence of any in-court identification, because it has occurred under nonsuggestive circumstances and closer in time to the offense. See *Commonwealth* v. *Weichell*, 390 Mass. 62, 71 (1983), and cases cited. If the jury are convinced that a prior identification was made, their use of that identification should not be artificially limited merely because a witness the jury do not believe has denied making that identification.

---

Modica's version did not deprive Modica's testimony of its potential value to the jury.

In the present case, the defendants had an ample opportunity to cross-examine Nguyen about the statements he had made at the police station while reviewing photographs. Cross-examination was not limited by the judge, and Nguyen did not assert any privilege or otherwise refuse to testify on the subject of his prior statements of identification. Nguyen's version of those prior identifications was entirely favorable to the defendants. We see no violation of evidentiary rules, as we now interpret them, and no denial of the defendants' right of confrontation in allowing the Commonwealth to introduce and make substantive use of Modica's contrary testimony regarding the contents of Nguyen's statement of identification.

Although the trial, as conducted, did not comply with the evidentiary rules as they then stood — *Daye* was still good law at the time, and the judge should have adhered to its restrictions — we do not see any unfairness in applying the modified rule retroactively in these circumstances. As indicated above, this change in our interpretation of the rule does not alter the evidence that is presented to the jury, but only takes away from the defendants a limiting instruction. Cf. *Commonwealth* v. *Saunders*, 435 Mass. 691, 692, 694 (2002) (where prior conviction improperly admitted, defendant entitled to new trial; new requirement applied prospectively). There was nothing erroneous, even under prior law, in the judge's overruling the defendant's objections to Modica's testimony concerning Nguyen's statements identifying the defendants as the perpetrators. That the jury did not hear an instruction telling them that they could consider that testimony only for purposes of assessing the credibility of Nguyen's trial testimony would have had minimal — if any — impact on the jury's weighing of the over-all evidence of identification in these cases (see note 8, *supra*). We thus see no unfairness in applying a literal interpretation of Proposed Mass. R. Evid. 801 (d) (1) (C) retroactively to this case.

b. *In-court identifications.* Prior to trial, the defendants filed a motion to preclude Luong from making any in-court identification, arguing that Luong's attendance at prior hearings, during which he had seen the defendants, amounted to impermissibly suggestive identification procedures. See *Commonwealth* v.

*Botelho*, 369 Mass. 860, 865-869 (1976). See also *Commonwealth* v. *Johnson*, 420 Mass. 458, 465 (1995). However, the defendants point to no specific instance of what transpired at those prior hearings (other than to indicate that Luong identified Le in some fashion when he testified at a hearing to revoke Le's probation). While we have recognized that a defendant's isolation in a court room involves a degree of suggestiveness, "such isolation does not, in itself, render the identification impermissibly suggestive." *Commonwealth* v. *Napolitano*, 378 Mass. 599, 604 (1979), citing *Commonwealth* v. *Jones*, 375 Mass. 349, 358-359 (1978). More importantly, counsel is present at such proceedings, and may ask that various precautions be taken to avoid suggestive confrontations between a witness and a defendant. *Commonwealth* v. *Napolitano, supra* at 604 & n.8, and cases cited. Where, as here, counsel do not request the court to take such precautions at an earlier hearing,[9] the defendant cannot complain that an in-court identification at a later trial has been tainted by exposure during the prior proceedings. See *Commonwealth* v. *Jones, supra*, and cases cited.

*Judgments affirmed.*

---

[9]The failure to seek such measures at earlier hearings is unremarkable here, as Luong knew both defendants, and it was undisputed that both defendants were present at the scene immediately prior to the assault. Indeed, Huynh's attorney contended in closing argument that Luong's identification of Huynh was a deliberately false accusation — Luong had belatedly decided to accuse Huynh because Luong had incurred some medical expenses as a result of his facial injuries, knew that Huynh had been present at the scene, and knew that Huynh's family had a business (and could thus afford to make restitution). The issue was not whether Luong could identify Huynh and Le, but why he would accuse them of a crime that he ostensibly knew they did not commit.