## COMMONWEALTH *vs.* ROBERT PETERSEN.

No. 05-P-830.

Bristol. May 11, 2006. - August 4, 2006.

Present: KANTROWITZ, BERRY, & DOERFER, JJ.

*Motor Vehicle,* Operating under the influence, Operation. *Practice, Criminal,* Argument by prosecutor, Instructions to jury. *Alcoholic Liquors,* Possession of opened bottle.

At the trial of a criminal complaint charging operating a motor vehicle while under the influence of alcohol, G. L. c. 90, § 24(1), and negligent operation of a motor vehicle so as to endanger, G. L. c. 90, § 24(2), the evidence reasonably supported an inference that the defendant was the operator of the car in question. [51-53]

Any error arising from the prosecutor's suggestion during closing argument at a criminal trial that the jury use certain pretrial identification evidence substantively, instead of for impeachment purposes, was harmless, in light of the numerous instructions provided to the jury. [53-54]

A substantial risk of a miscarriage of justice arose from the judge's failure at a criminal trial to instruct the jury on the crime of being a person under twenty-one years of age in possession of alcohol, where the alcohol was, at best, constructively possessed. [54-55]

This court vacated that portion of a judgment regarding the commission of a second offense of operating a motor vehicle under the influence of alcohol (OUI), G. L. c. 90, § 24(1), where the judge erred in not holding a trial or a change of plea colloquy on the second offense portion of the defendant's OUI charge. [55]

COMPLAINT received and sworn to in the Attleboro Division of the District Court Department on October 29, 2003.

The case was tried before *Robert E. Baylor,* J.

*Jennifer Marie Petersen* for the defendant.

*William R. Connolly,* Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. A jury convicted the defendant of operating a motor vehicle while under the influence of intoxicating liquor (OUI), G. L. c. 90, § 24(1); negligent operation of a motor

vehicle so as to endanger, G. L. c. 90, § 24(2); and being a person under twenty-one years of age in possession of alcohol, G. L. c. 138, § 34C.[1] Subsequently, the trial judge entered a finding of guilt as to the second offense portion of the OUI charge.

On appeal, the defendant claims (1) insufficient proof of operation; (2) improper closing argument; (3) failure to instruct on the possession of alcohol charge; and (4) failure to conduct a trial or a change of plea colloquy on the second offense portion of the OUI charge after defense counsel purported to stipulate that the defendant had a prior OUI conviction and thus waived his client's right to trial on the issue. We affirm in part and reverse in part.

*Facts.* On a rainy October 28, 2003, at approximately 11:00 P.M., Steven Sherman, a resident of Cumberland Avenue in North Attleboro, was awakened from sleep and looked outside a window of his home. What he saw is in dispute. What is not in dispute is that he called 911 and police Officer Joshua Mc-Mahon quickly responded to a residential property at 277 Cumberland Avenue, where he observed a tan Mercury Marquis automobile on the front lawn. Tire marks indicated that the car had been driven from Cumberland Avenue onto the lawn, about ten feet from the street, over a stone wall where the vehicle was lodged. The car, registered to the defendant, was still warm to the touch, indicating that it had been recently driven.

The controversy arises from Sherman's testimony, which conflicted with what he allegedly told Officer McMahon. Sherman testified that he saw two vehicles in front of his house. One of the vehicles was on his neighbor's lawn across the street, and the other was parked on the street. Two persons were standing near the white-colored vehicle on the street, while a

---

[1]The jury found the defendant not guilty of leaving the scene after causing property damage. At a later date, before a different judge, other charges pending against the defendant were filed without a change of plea (operating an uninsured vehicle, G. L. c. 90, § 34J; operating after license suspension for operating under the influence, operating with a suspended registration, both pursuant G. L. c. 90, § 23; and a marked lanes violation, G. L. c. 89, § 4A). Because a charge of operating a motor vehicle after license suspension for operating under the influence cannot be placed on file, see G. L. c. 90, § 23, second par., we remand for proper disposition of the charge.

third person was looking around the vehicle on the neighbor's front lawn. Sherman did not recognize any of the three people, all of whom left the scene in the white car.

In contrast, Officer McMahon testified that Sherman told him the following: that he (Sherman) came outside and saw a vehicle across the street on the lawn; that Sherman observed a young man whom he believed to be another neighbor, the defendant, get out of the driver's seat of the car on the lawn; that shortly thereafter, a white car came along; and that the defendant entered the white car and it drove off.[2]

It was not disputed that while the officer was speaking with Sherman, the defendant walked from another yard and up the street toward the area of the accident. The defendant told Officer McMahon that he came to get his car and that he did not know what had happened; he further said that he had been picked up by a white car that night, not on Cumberland Avenue, but in South Attleboro.

While he was speaking with the defendant, Officer McMahon observed that the defendant's speech was slurred, his eyes were bloodshot, and a strong odor of alcohol emanated from him. The defendant confirmed that he had been drinking; had on his person a set of car keys to the vehicle located on the front lawn; and agreed to take a series of field sobriety tests, which he failed, resulting in his arrest. An inventory search of the car revealed a half-empty bottle of whiskey on the front seat and several empty beer bottles on the back seat and the rear floor. When asked, the defendant told the officer that he was twenty years old.

Needless to say, of significance at trial, Sherman was unable to identify any of the three people he saw that evening and denied that he had recognized anyone.[3]

*Operation.* The defendant contends that the evidence presented at trial, even when viewed in the light most favorable to the Commonwealth, see *Commonwealth* v. *Platt*, 440 Mass.

---

[2]The judge instructed the jury, at this point and in his final jury instructions, that the officer's testimony was for impeachment purposes only.

[3]Sherman acknowledged that he knew the defendant as a neighbor and had spoken with the defendant's mother about the case prior to testifying at trial.

396, 400 (2003), did not establish that he operated the motor vehicle in question.[4]

Proof of operation of a motor vehicle may "rest entirely on circumstantial evidence." *Commonwealth* v. *Cromwell*, 56 Mass. App. Ct. 436, 438 (2002), quoting from *Commonwealth* v. *Woods*, 414 Mass. 343, 354, cert. denied, 510 U.S. 815 (1993). Here, the relevant circumstantial evidence of the defendant's operation reveals that (1) when the police arrived, the car's engine was still warm, showing that it had been recently driven, see *Commonwealth* v. *Cromwell*, 56 Mass. App. Ct. at 439; (2) he was the registered owner of the car, lived in the neighborhood, and appeared at the scene shortly after the police arrived, acknowledging that he came to pick up his car, see *ibid.*, citing *Commonwealth* v. *Deramo*, 436 Mass. 40, 43 (2002) (with regard to reasonable suspicion standard for investigative stops, "courts have held that the police may, in the absence of any contrary evidence, reasonably conclude that a vehicle is likely being driven by its registered owner"); (3) he had keys to the car in his possession; (4) he appeared intoxicated and confirmed that he had been drinking, and a half-empty bottle of whiskey and several empty beer bottles were found in the car; (5) he agreed to and complied with field sobriety tests administered by the police officer, see *Commonwealth* v. *Cromwell, supra*; *Commonwealth* v. *O'Connor*, 420 Mass. 630, 632 (1995) ("finder of fact could infer operation from the facts and circumstances surrounding the accident and from the defendant's cooperation with the field sobriety tests"); (6) there was no evidence tending to indicate that someone other than the defendant was operating the car, see *Commonwealth* v. *Cromwell, supra*, citing *Commonwealth* v. *Adams*, 421 Mass. 289, 291-292 (1995); and (7) he indicated that he had gotten into a white car in South Attleboro, in apparent contradiction to Sherman's testimony that he saw three people drive off in a white car on Cumberland Avenue.

Viewed as a whole, this evidence reasonably supports an

---

[4]Operation of a motor vehicle is an element of both operating a motor vehicle while under the influence of intoxicating liquor and negligent operation of a motor vehicle so as to endanger. See G. L. c. 90, § 24; Model Jury Instructions for Use in the District Court, Instructions 5.10 & 5.15 (1997).

inference that the defendant was the operator of the crashed car. "That the case against [the defendant] was 'circumstantial' in some sense of that dubious term does not suggest that the proof was insufficient." *Commonwealth* v. *Best*, 381 Mass. 472, 483 (1980). "While it is not necessary to prove that the defendant had the exclusive opportunity to commit the crime[], . . . and while the inferences need not be inescapable or necessary, . . . yet the evidence must be such as to convince a jury beyond a reasonable doubt that the defendant, and no one else, committed the offence[] charged." *Commonwealth* v. *Shea*, 324 Mass. 710, 713 (1949). Here, the evidence was sufficient to allow *"any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Platt*, 440 Mass. at 400, quoting from *Commonwealth* v. *Cordle*, 412 Mass. 172, 175 (1992). See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979).

*Closing argument.* The defendant next asserts that the prosecutor engaged in improper closing argument by suggesting to the jury that they should use substantively, instead of for impeachment purposes only, Sherman's statement to the police officer that he saw the defendant get out of the driver's seat of the crashed car.[5] The Commonwealth counters that the argument was proper in that it only served to undermine Sherman's credibility, not encourage impermissible use of the officer's testimony as proof of operation.

Even if we were to agree with the defendant, any error would be harmless in light of the numerous instructions provided to the jury. In his preliminary comments, the judge informed the jury that opening, as well as closing, statements by the attorneys were not evidence. After Officer McMahon testified that Sherman had informed him at the scene that Sherman had observed the defendant get out of the car, the judge gave the

---

[5]The defendant challenges, among others, the following statements made by the prosecutor in his closing argument: "I would suggest to you that Mr. Sherman may not be the most credible witness, and I would suggest to you that the officer is. And you heard from the officer that on the night in question, Mr. Sherman did identify the defendant as the person . . . . You[] heard from the officer that Mr. Sherman, on that night, did state to him that the defendant was driving the car. I would suggest to you, as well, that the officer, based on his testimony, the defendant was driving on a public way." Defense counsel objected to the argument at trial on the same basis noted above.

jury a limiting instruction.[6] Later, in his final instructions, the judge again repeated the limitation, as well as other instructions, focusing the jury on how it was to reach its verdict.[7] Juries are presumed to follow the instructions given them. See *Commonwealth* v. *Watkins*, 425 Mass. 830, 840 (1997).[8]

Regardless, after the trial, the Supreme Judicial Court released *Commonwealth* v. *Cong Duc Le*, 444 Mass. 431 (2005), which now allows "substantive use of pretrial identification evidence, even if the witness testifies that he or she did not make such an identification." *Id.* at 432, overruling *Commonwealth* v. *Daye*, 393 Mass. 55, 60-63 (1984). We perceive no difficulty applying the rule of *Cong Duc Le* retroactively to the facts of this case. See *Commonwealth* v. *Cong Duc Le, supra* at 442.

*Failure to instruct on minor in possession of alcohol count.*[9] The defendant further claims error in that the judge did not instruct the jury with regard to the charge of being a person under twenty-one years of age in possession of alcohol. The judge, indeed, entirely omitted instructing the jury on this crime, an oversight not brought to his attention by either the prosecutor or defense counsel.

While an omission of an element of a crime does not require

[6]"Ladies and Gentlemen, that answer to that question is being offered at this particular time, not necessarily for the truth of what it is that [Officer McMahon is] saying; it's being offered to impeach the testimony of the prior witness [Mr. Sherman]."

[7]In his final instructions, the judge again told the jury that "the evidence in this case consists of the testimony of the witnesses as you recall it." He went on to say that "[s]ome things that occurred during a trial are not evidence, and you may not consider them as evidence in deciding the facts of this case . . . . Opening statements, closing arguments of the attorneys are not a substitute for the evidence. They're only intended to assist you in understanding the evidence and contentions of the parties."

[8]In light of the judge's instructions to the jury, we also deem meritless the defendant's other allegations of prosecutorial impropriety in the closing argument.

[9]The judge placed on file the defendant's conviction of being a person under twenty-one years of age in possession of alcohol. The record does not reveal the defendant's affirmative assent to the filing, or even that an opportunity to object was afforded by the judge and declined by the defendant. As the Commonwealth correctly concedes in its brief, the conviction is properly before us for review. See *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975); *Commonwealth* v. *Paniaqua*, 413 Mass. 796, 797 n.1 (1992); *Commonwealth* v. *Grace*, 43 Mass. App. Ct. 905, 907 (1997).

automatic reversal, *Commonwealth* v. *Redmond,* 53 Mass. App. Ct. 1, 7 (2001), we believe that, in the facts and circumstances of this case, reversal is nonetheless required under a substantial risk of a miscarriage of justice standard. While terms such as possession, alcohol, and under twenty-one years of age may seem self-evident, the alcohol here was, at best, constructively possessed, a more complex concept[10] of which the jury were also not instructed. Also, while *Commonwealth* v. *Redmond, supra* at 6, speaks about the absence of an "essential" element, here we have the absence of all elements of an entire crime. See *Commonwealth* v. *Key,* 381 Mass. 19, 27 (1980); *Commonwealth* v. *Mills,* 436 Mass. 387, 398 (2002).

*Failure to hold plea colloquy.* The Commonwealth correctly concedes that it was error for the judge not to hold a trial or a change of plea colloquy on the second offense portion of the OUI charge, after defense counsel purported to stipulate that the current charge was a second offense. See G. L. c. 278, § 11A; *Commonwealth* v. *Chaplin,* 50 Mass. App. Ct. 365, 367 (2000) ("[w]hile surely the defendant may waive a jury trial on a prior offense, there are certain procedures that should accompany such a waiver, including an informed colloquy between the judge and the defendant").

As such, we vacate that portion of the judgment regarding the commission of a *second* offense of operating under the influence of alcohol. See *id.* at 368.

*Conclusion.* The judgment of conviction of negligent operation of a motor vehicle is affirmed. The judgment of conviction of being a person under twenty-one years of age in possession of alcohol is vacated. So much of the judgment of conviction of operating under the influence as states the defendant was found guilty of a second offense is vacated, and the sentence on that count of the complaint is vacated. Lastly, the order placing on file the charge of operation after license suspension is reversed. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[10]See, for example, the instructions on constructive possession discussed in *Commonwealth* v. *Sann Than,* 442 Mass. 748, 752-755 (2004).