## Commonwealth *vs.* Otis Miles.

No. 97-P-1522.

Suffolk. October 13, 1998. - January 25, 1999.

Present: Warner, C.J., Greenberg, & Gillerman, JJ.

*Homicide. Malice. Self-Defense. Evidence,* Self-defense, Prior misconduct. *Practice, Criminal,* Argument by prosecutor, Comment by prosecutor, Instructions to jury.

Evidence at a murder trial was sufficient to warrant the defendant's conviction of murder in the second degree beyond a reasonable doubt [217-218]; and the evidence also supported a finding that the defendant did not act in self-defense [218-219].

At the trial of a murder case, the prosecutor twice, in closing argument, mis-stated the evidence and once argued a "fact" unsupported by the evidence; however, the defendant suffered no prejudice from the one remark he objected to, given the strong case against him, the insignificance of the remark, and the judge's forceful instruction that arguments of counsel were not evidence; and for the same reasons no substantial risk of a miscarriage of justice was created by the prosecutor's other erroneous statements. [219-221]

At the trial of a criminal case, the prosecutor properly argued the credibility of the defendant based on his courtroom demeanor. [221-222]

At the trial of a criminal case, the prosecutor properly argued an inference from the evidence, and there was no merit to the defendant's claim that it was an improper comment on the defendant's constitutional right to travel. [222]

At a criminal trial, there was no error in a prosecutor's argument on the defendant's self-defense theory, and there was no merit to the defendant's claim that the argument shifted the burden of proof. [222]

At a criminal trial, a statement of the defendant admitting a prior bad act was properly admitted in evidence as probative of his motive for shooting the victim. [222-223]

At the trial of a murder indictment, the judge's instructions and supplemental instruction on self-defense were correct and adequate. [223]

Indictment found and returned in the Superior Court Department on December 7, 1994.

The case was tried before *Elizabeth B. Donovan,* J.

*James M. Doyle* for the defendant.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

WARNER, C.J. A Superior Court jury found the defendant guilty of second degree murder. On appeal, the defendant claims (1) the evidence was insufficient to warrant a finding that he acted with malice because he acted in self-defense; (2) the prosecutor's closing argument necessitated a mistrial; (3) the judge erroneously admitted evidence of a prior bad act; and (4) the judge's supplemental instruction to the jury was erroneous.

The jury could have found the following facts beyond a reasonable doubt. In the summer of 1994, the defendant, Otis Miles, informed a cousin of Tony Evans, the victim, that Evans had stolen the defendant's moped. The defendant indicated to Evans's cousin that he was upset by this and was going to kill Evans. When Evans's cousin suggested that the defendant simply injure Evans instead, the defendant replied, "No, he fucked up. . . . I shot my own brother, so what the hell [do] I care about [Evans]." Subsequently, Evans returned the moped to his cousin, who then returned it to the defendant.

On the evening of October 7, 1994, Evans encountered the defendant sitting on the front steps of the apartment building where the defendant's girlfriend lived. The two men soon began to exchange words. The defendant then went inside the apartment building, but Evans followed and a fight ensued between the two until friends broke it up. Evans yelled, "Go get your heat," to which the defendant responded, "Motherfucker, stay right here 'til I get back." The defendant subsequently went upstairs to the second floor and Evans left the building.

Several minutes later, Evans returned to the front of the apartment building with two other men. The defendant then emerged from the apartment building and confronted Evans, who moved his empty hands away from his body and threw them into the air. Nonetheless, the defendant pulled out his gun and fatally shot Evans in the stomach. A witness testified that, after the shooting, the defendant said to Evans, "I told you not to fuck with me."

1. *Motions for required finding of not guilty.* The defendant moved for a required finding of not guilty at the close of the Commonwealth's case and at the close of all the evidence. These motions were denied. The defendant argues that because he acted in self-defense, the evidence was insufficient to warrant a finding that he acted with malice.

"In order to prove murder, it is the Commonwealth's burden to prove beyond a reasonable doubt that the defendant acted with malice, and that he acted without reasonable provocation, or in the absence of sudden heat of blood or passion . . . ." *Commonwealth* v. *McLeod*, 394 Mass. 727, 738, cert. denied, 474 U.S. 919 (1985). To prove malice, the Commonwealth must establish, beyond a reasonable doubt, that the defendant, without justification or excuse "(1) . . . intended to kill the victim . . . , or (2) . . . intended to do the victim grievous bodily harm . . . , or (3) in the circumstances known to the defendant, a reasonably prudent person would have known that, according to common experience, there was a plain and strong likelihood that death would follow the contemplated act." *Commonwealth* v. *Sneed*, 413 Mass. 387, 388 n.1 (1992). *Commonwealth* v. *Vizcarrondo*, 427 Mass. 392, 394-395 n.3 (1998). "[M]alice may be inferred from the intentional use of a deadly weapon." *Commonwealth* v. *Young*, 35 Mass. App. Ct. 427, 433 (1993).

Viewing the evidence in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979); *Commonwealth* v. *Andrews*, 427 Mass. 434, 440 (1998), a rational jury could have found the required elements of second degree murder beyond a reasonable doubt. The defendant intentionally used a deadly weapon and shot Evans without legal justification. After the initial altercation with Evans, the defendant went into the apartment building, and emerged several minutes later, armed with a deadly weapon. The defendant then purposefully approached Evans, whose empty hands were raised in the air, and who did not appear to be armed. The defendant next shot Evans at close range and then stated, "I told you not to fuck with me." Accordingly, it can be inferred that the defendant intended to kill Evans, and thus acted with malice. See *Commonwealth* v. *Guerriero*, 14 Mass. App. Ct. 1012, 1012 (1982) (malice inferred when defendant walked away from the victim after an argument, then reached for a concealed gun, turned and moved toward the victim and shot him at close range); *Commonwealth* v. *Colantonio*, 31 Mass. App. Ct. 299, 312 (1991) (malice inferred when defendant took a bat from a car, walked over to the victim, and forcefully swung it at him).

Where the evidence warrants an instruction on self-defense, the Commonwealth must disprove that theory beyond a reason-

able doubt. See *Commonwealth* v. *Johnson*, 426 Mass. 617, 620 (1998); *Commonwealth* v. *Souza*, 428 Mass. 478 (1998). "A defendant is entitled to an instruction relating to the law of self-defense only if there is 'evidence warranting at least a reasonable doubt that the defendant: (1) had a reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force, and (3) used no more force than was reasonably necessary in all the circumstances of the case.' " *Commonwealth* v. *Pichardo*, 45 Mass. App. Ct. 296, 301-302 (1998), quoting from *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980).

Here, the evidence which we have rehearsed also supports a finding that the defendant did not act in self-defense. Even if the jury had believed that the defendant had been afraid of Evans in the past, there was no evidence that, at the time of the incident, the defendant had a reasonable basis to fear for his life. Evans, who gave no indication that he was armed, had his hands raised in the air at the time of the shooting. Thus, contrary to the defendant's contention, this was not a circumstance of excessive force in self-defense. See *Commonwealth* v. *Pichardo*, 45 Mass. App. Ct. at 302 (no excessive force in defense of another instruction required where the victim's hands were in the air, no weapon was visible and the victim had begun to walk away from the defendant's friend just before the defendant shot him). Contrast *Commonwealth* v. *Boucher*, 403 Mass. 659, 664 (1989) (self-defense charge required where victim attacked the defendant, delivering a karate kick to his head). Therefore, the motions for a required finding of not guilty were properly denied.

2. *The prosecutor's closing argument*. The defendant contends that during closing argument the prosecutor misstated the evidence, improperly put the defendant's character at issue, improperly remarked on the defendant's constitutional right to travel, and shifted the self-defense burden of proof.

a. *Misstatement of the evidence*. The defendant asserts that three remarks made by the prosecutor in her closing argument were misstatements of the evidence. A prosecutor is permitted to argue the evidence and the reasonable inferences that may be drawn from that evidence. *Commonwealth* v. *Kozec*, 399 Mass.

514, 516 (1987). *Commonwealth* v. *Murchison,* 418 Mass. 58, 59 (1994). See *Commonwealth* v. *Ashley,* 427 Mass. 620, 627 (1998). However, a prosecutor may not misstate the evidence. *Commonwealth* v. *Kozec, supra* at 516. *Commonwealth* v. *Azar,* 32 Mass. App. Ct. 290, 307 (1992).

Here, the prosecutor quoted the defendant as saying, "[w]ait here while I go get my piece." A witness, Henrietta Hicks, who was a cousin of the victim, actually testified that she heard Evans yell, "Go get your heat," to which a reply was heard, "Stay right here 'til I get back." Although a reasonable inference may be drawn that the defendant went inside the apartment to get his gun, the prosecutor did not ask the jury to make that inference. Rather, the prosecutor erroneously misquoted the evidence.

Additionally, the prosecutor quoted the defendant as saying, "I'm going to go out looking for [Evans] with a gun" and "[i]f he doesn't return the moped, then I will look for him, I will find him, and I will kill him."[1] While it can reasonably be inferred from the witness's testimony that the defendant intended to search for Evans in order to kill him, the defendant never actually said he was going to look for Evans with a gun. Therefore, the prosecutor again misstated the evidence.

Lastly, the prosecutor referred to one of the defendant's associates as a gang member. There is little evidence of this fact other than the defendant's testimony that he saw his friend socializing daily in an area, where his friend did not live, known to be gang territory. Thus, the prosecutor's remark was improper as it was unsupported by the evidence.

Because the defendant properly objected to the statement regarding the defendant's remark about going to get his gun, "[t]he standard for determining whether a conviction must be reversed is whether the improper statements made by the prosecutor 'constituted prejudicial error.' " *Commonwealth* v. *Santiago,* 425 Mass. 491, 500 (1997), quoting from *Commonwealth* v. *Daggett,* 416 Mass. 347, 352 n.5 (1993).

---

[1]Bernice Hicks, the victim's cousin, testified about her conversation with the defendant regarding the stolen moped as follows, "[The defendant] said, [Evans] took my moped. And [the defendant] said, [Evans] don't know me. [Evans] fucked up. [The defendant] said, Well, I want my moped back. [Evans] shouldn't have tooken it from me. I said, Well, I'll go look for [Evans] and see, because [the defendant] had said he was going to kill [Evans]."

"And I said, Well, don't kill him, just whip his ass, like that. And [the defendant] said, No, he fucked up."

In assessing whether reversal is required, the "cumulative effect of all the errors in the context of the entire argument and the case as a whole is considered." *Commonwealth* v. *Santiago*, *supra* at 500. Specifically, we must review the following factors: "whether defense counsel seasonably objected to the arguments at trial . . . ; whether the judge's instructions mitigated the error . . . ; whether the errors in the arguments went to the heart of the issues at trial or concerned collateral matters . . . ; whether the jury would be able to sort out the excessive claims made by the prosecutor . . . ; and whether the Commonwealth's case was so overwhelming that the errors did not prejudice the defendant." *Ibid.*, and cases cited.

Here, although the comment may constitute error, no prejudicial harm resulted for the following reasons. First, the prosecutor's erroneous statement was insignificant in the context of the entire argument. Second, the judge's instructions clearly and forcefully stated that the jury should not consider the closing arguments as evidence and, if counsel had misstated any evidence, it was their memory of the evidence that would control. See *Commonwealth* v. *Kozec*, 399 Mass. at 518 (impact of closing argument may be mitigated by a judge's forceful instructions to the jury that the argument should be disregarded). Lastly, the Commonwealth's case was strong given the testimony of three eyewitnesses that the defendant shot Evans at close range as he had his empty hands raised in the air.

Because the defendant failed to object to the statements pertaining to his threats about the stolen moped and his associate's status as a gang member, the substantial risk of a miscarriage of justice standard applies to those two comments. *Id.* at 518 n.8. For the reasons stated above, these comments do not rise to the level of a substantial risk of a miscarriage of justice. Thus, the prosecutor's erroneous statements during closing argument do not require reversal.

b. *Comment on character.* The defendant also argues that, before the defendant first offered evidence of good character or predisposition, the prosecutor improperly put the defendant's character at issue by asking, "What does his demeanor on that stand tell you about [the defendant]? Does he appear to be the type of person that would be scared to death under the circumstances?"

A prosecutor is allowed to attack the credibility of a defendant. *Commonwealth* v. *Donovan*, 422 Mass. 349, 357

(1996). *Commonwealth* v. *Andrews*, 34 Mass. App. Ct. 324, 331 (1993). Similarly, a prosecutor may argue in support of the credibility of witnesses based on their demeanor. See *Commonwealth* v. *Kozec*, 399 Mass. at 521; *Commonwealth* v. *Krepon*, 32 Mass. App. Ct. 945, 946-947 (1992).

Here, the prosecutor's statement addressed the defendant's credibility, not his character, as indicated by her statement just prior to the disputed comment, that the jury were "entitled to assess [the defendant's] demeanor in determining whether or not you believe he was scared to death of Tony Evans." Because the defendant took the stand and claimed self-defense, his credibility became a central issue in the case and could be referred to in closing argument. Accordingly, there was no error.

c. *Comment on constitutional right.* The defendant's next contention is that in closing argument the prosecutor improperly commented on his constitutional right to travel when she encouraged jurors to infer guilt from his presence at the crime scene by asking, "[W]ould [the defendant], if he was so afraid of Tony Evans and received all these threats, [have] stayed on the stairs in front of [the crime scene] just before the shooting?" The defendant's claim lacks merit because the prosecutor merely made a permissible inference from the evidence regarding the defendant's theory of self-defense. See *Commonwealth* v. *Kozec*, 399 Mass. at 516.

d. *Burden-shifting comment.* Lastly, the defendant argues that the prosecutor shifted the self-defense burden of proof by repeatedly stating that an acquittal on a self-defense theory required jurors to "find" certain facts. The defendant's reliance on *Connolly* v. *Commonwealth*, 377 Mass. 527, 533 (1979), is misplaced since that case addressed an improper jury charge, not an argument by trial counsel. Furthermore, the judge gave clear and repeated instructions on the correct burden of proof, see *Commonwealth* v. *Giguere*, 420 Mass. 226, 230-231 (1995), and instructed the jury to disregard the attorneys' statements about the law. Thus, there was no error.

3. *Prior bad act.* The defendant asserts that the judge improperly admitted evidence of a prior bad act by allowing a witness to testify that the defendant said, "I shot my own brother, so what the hell [do] I care about [Evans]." It is well established that the Commonwealth may introduce evidence of a defendant's previous bad acts not to show a propensity to commit the crime charged, but for other relevant purposes.

*Commonwealth* v. *Otsuki*, 411 Mass. 218, 236 (1991). *Commonwealth* v. *Leonardi*, 413 Mass. 757, 763 (1992). *Commonwealth* v. *Fordham*, 417 Mass. 10, 22 (1994). If the evidence is relevant to issues other than bad character or criminal propensity, it is admissible provided that its value is not outweighed by its unfair prejudice. *Ibid.* The witness's testimony here, taken as a whole, recounted the defendant's reaction to his moped being stolen by Evans, and was relevant to defeat the defendant's claim of self-defense. That is, the statement was probative of his motive for shooting Evans, which was anger, not fear.

4. *Jury instructions.* The defendant challenges the judge's supplemental instruction to the jury regarding self-defense because it failed to caution the jurors against using hindsight in evaluating self-defense. A jury charge must be examined as a whole to assess its impact. See *Commonwealth* v. *Watkins*, 425 Mass. 830, 840 (1997). It is assumed that the jury understood and followed the judge's instructions. *Ibid.* Moreover, supplemental instructions do not require a judge to repeat "the same thought at each turn." *Ibid.*, quoting from *Commonwealth* v. *Peters*, 372 Mass. 319, 324 (1977).

Here, the instructions repeatedly explained that a person may defend himself even if he is under a mistaken belief that the other person is about to attack him physically, provided the belief is reasonable in the circumstances at that time.[2] Thus, given the repetition and clarity of the instructions, a reasonable jury would not have mistakenly concluded that they should use hindsight in considering self-defense simply because the judge omitted the word "hindsight" from the instructions. See *Commonwealth* v. *Torres*, 420 Mass. 479, 484 (1995) (a judge need not give "instructions in any particular form of words, so long as all necessary instructions are given in adequate words").

*Judgment affirmed.*

---

[2]The judge's initial instructions were as follows: "[t]hat is a reasonable person in the defendant's circumstances — and you have to take the *circumstances as they existed at that particular time* — that in those circumstances a reasonable person would reasonably believe that he was immediately about to be attacked and he was in immediate danger of being killed or seriously injured." The judge again explained that a person may lawfully use self-defense to defend himself only if the mistaken belief is "reasonable *in all of the circumstances of this particular incident."* The supplemental instruction stated that the belief must be reasonable *"in all of the circumstances of the facts of the case."* (Emphasis supplied.)