Cypher, J.
The defendant, Quincy Butler, appeals from his convictions of murder in the second degree, G. L. c. 265, § 1, and *600 eight related offenses.[1] The defendant was tried with a codefend-ant, William Wood, on a theory of joint venture for crimes committed in the course of a botched kidnapping and robbery attempt.[2] Wood was convicted of murder in the first degree and various other charges.[3] He appealed his convictions to the Supreme Judicial Court, which found no reversible error and found no reason to reduce or reverse the conviction of murder in the first degree pursuant to its authority under G. L. c. 278, § 33E.[4] See Commonwealth v. Wood, 469 Mass. 266 (2014).
On appeal, the defendant argues that he was deprived of equal protection and due process because the prosecutor engaged in racial and gender discrimination during jury empanelment. Specifically, he claims that the prosecutor attempted to select jurors who resembled the victim, a white female, and to avoid jurors who resembled the defendants, African American men. The defendant also argues several other issues, some of which were raised by Wood and reviewed and rejected by the Supreme Judicial Court in Wood, supra.[5] We affirm.
The Supreme Judicial Court thoroughly explicated the facts of the case in Wood, supra. We will address relevant facts where necessary.
*601 Discussion. 1. Jury empanelment. “Article 12 of the Massachusetts Declaration of Rights proscribes the use of peremptory challenges ‘to exclude prospective jurors solely by virtue of their membership in, or affiliation with, particular, defined groupings in the community.’ ” Commonwealth v. Smith, 450 Mass. 395, 405 (2008), quoting from Commonwealth v. Soares, 377 Mass. 461, 486, cert. denied, 444 U.S. 881 (1979). “Peremptory challenges are presumed to be proper.” Commonwealth v. Maldonado, 439 Mass. 460, 463 (2003). However, that presumption may be rebutted by showing that “(1) there is a pattern of excluding members of a discrete group and (2) it is likely that individuals are being excluded solely on the basis of their membership” in that group. Ibid., quoting from Commonwealth v. Garrey, 436 Mass. 422, 428 (2002). “A single peremptory challenge can constitute a prima facie showing that rebuts the presumption of proper use.” Commonwealth v. Curtiss, 424 Mass. 78, 79 (1997).
When the question of an improper use of a peremptory challenge is raised, the judge must make an initial finding as to whether the opposing party has made a prima facie showing that the use of the challenge was improper. Maldonado, 439 Mass. at 463, citing Commonwealth v. Burnett, 418 Mass. 769, 771 (1994). See Commonwealth v. Lacoy, 90 Mass. App. Ct. 427, 431 (2016). We do not disturb a judge’s finding regarding whether a permissible ground for a peremptory challenge exists unless the judge abused his or her discretion. See Commonwealth v. Rodriguez, 431 Mass. 804, 811 (2000); Commonwealth v. Issa, 466 Mass. 1, 9-11 (2013). When reviewing such a claim, we consider the totality of the circumstances presented to the judge, including the composition of the venire, the composition of the jury, the previous use of peremptory challenges, and other possible reasons that the juror could have been excluded. See Commonwealth v. LeClair, 429 Mass. 313, 321 (1999) (composition of final deliberating panel); Issa, supra.
If the judge determines that the opposing party has established a prima facie case that the challenge was used for a discriminatory purpose, the burden shifts to the party seeking to exercise the challenge to provide a permissible explanation for that challenge. The judge must then determine whether the reason provided is genuine. See Maldonado, 439 Mass, at 463-464, and cases cited.
The jury empanelment for the trial in this case occurred over two days. At the outset of empanelment, defense counsel objected to the “numbering system” and to the “strike method” and order *602 in which the jurors were being selected. He objected, in part, as follows:
“I would note that for the first twenty-five jurors only five are males, so that means we’re down to four to one during the first twenty-five. The second set of twenty-six, nineteen are females and seven are males. It’s only when we get to the last twenty-four that we see what looks to be close to a 49 to 51 percent.
“In other words, Mr. Butler is being asked to pick a jury where the first, over first fifty potential jurors are predominantly, close to 70 percent female. And I would suggest, and I object on his behalf, but I suggest that is not a fair representation or cross section.”
The defendant has not demonstrated that any alleged under-representation in the venire was caused by systematic exclusion of a distinctive group.[6] See Commonwealth v. Leitzsey, 421 Mass. 694, 700 (1996), quoting from Duren v. Missouri, 439 U.S. 357, 364 (1979), and citing Taylor v. Louisiana, 419 U.S. 522, 531 (1975), and Commonwealth v. Pope, 392 Mass. 493, 500 (1984) (“[T]o prove that a petit jury selection process infringes a defendant’s constitutional right to be tried by a jury representative of a fair cross section of the community, the defendant must show ‘that the group alleged to be excluded is a “distinctive group” in the community; . . . that the representation of this group in venires ... is not fair and reasonable in relation to the number of such persons in the community; and . . . that this underrepresen-tation is due to systematic exclusion of the group in the jury-selection process’ ”). “[T]he procedure used in this Commonwealth to choose jury panels from lists of qualified jurors is random selection. . . . Inevitably, some panels drawn by this method will fail to represent proportionately various groupings in the population.” Soares, 377 Mass, at 482.
The total number of prospective jurors in the venire was 130 persons, of whom forty-nine were men and eighty-one were women. On the first day of empanelment, Wood and the defendant challenged fourteen females, who were excused from the group that the judge had found to be impartial. Wood and the *603 defendant also challenged two males who had been found to be impartial, and the judge excused them.
The Commonwealth challenged and the judge excused four females and four males on the first day. The Commonwealth expressed a concern on one challenge about the juror’s ability to serve because she was on summer break from college. The Commonwealth then challenged the juror and she was excused. Next, the Commonwealth challenged a male juror who was on summer break from college. The Commonwealth also challenged a young black male and explained that he should not have been found indifferent. The Commonwealth argued that because he had stated to the judge that he was only “ninety percent” (rather than one hundred percent) sure that he could be unbiased and that he felt that blacks were punished disproportionally to whites, he should not have been found to be indifferent. When the judge disagreed, the Commonwealth challenged the juror and the judge excused the juror. Compare Commonwealth v. Colon, 408 Mass. 419, 440-441 (1990). Upon the defendant’s objection to the Commonwealth’s challenge, the judge declared that there was no pattern of discrimination and therefore did not ask for an explanation for the challenge. In any event, the Commonwealth had just provided a detailed reason to the judge, prior to the defendant’s objection, regarding why it believed this particular juror should have been excused for cause. Day one of the jury selection concluded with three females being seated.
The defendant and Wood opened day two of the empanelment process by filing a motion for a mistrial on the grounds that they had made a prima facie case of discrimination. The judge denied the motion. The Commonwealth challenged and excused a female. Two females were then seated. The Commonwealth next challenged and excused a male, juror number 100. An objection was made based on gender discrimination and the judge declined to find a pattern of discrimination. The defendant then immediately challenged the next juror, a male. Two more males were then seated and the defendant then challenged and excused the next juror, a male. The Commonwealth then challenged a female. The defendant objected, arguing that the pool had too few minorities and that this was the third challenge of a minority based on race or ethnicity.[7] The judge declined to find a pattern of discrimination. Two males were then seated.
*604 The defendant and Wood objected, claiming that the venire had more females than males. The judge overruled the objection. At this point in the process, five females and four males had been seated.
The Commonwealth challenged and excused another male and, after objection, the judge again found no pattern of discrimination.[8] A female was then seated. Wood challenged and excused two females. A male was seated. The Commonwealth then challenged and excused a male. The defendant and Wood objected and the judge declined to find a pattern of discrimination.[9] The Commonwealth next challenged and excused a female student on summer break. Wood and the defendant objected, claiming that the female student had some percentage of African descent and although the judge agreed, he declined to find a pattern of discrimination.[10] A male and a female were then seated. Wood challenged the next female. The Commonwealth objected, arguing that nine of Wood’s twelve challenges were to white females. The judge declined to find a pattern of discrimination and excused the juror. The Commonwealth challenged the next juror, a male, and no objection was made.[11] Wood and the defendant challenged and excused two more females. A male and two females were seated without challenge.
A total of sixteen jurors were empanelled — nine females and seven males. Of the females, five were white, three were Hispanic, and one was black. Of the males, four were white and three were black.[12]
“A trial judge is in the best position to decide if a peremptory challenge appears improper and requires an explanation by the *605 party exercising it.” LeClair, 429 Mass. at 321. We do not substitute our judgment for that of the judge as to whether the presumption of proper peremptory challenge has been rebutted when there is support in the record for the judge’s determination. See Commonwealth v. Colon, 408 Mass. at 440. Considering the totality of the prosecutor’s challenges, including the defendant’s objection to almost every peremptory challenge the Commonwealth made to prospective male jurors coupled with the defendant’s own challenges to prospective male jurors, the reasons expressed by the Commonwealth for challenging certain jurors, as well as the composition of the members of the jury, there was ample support for the judge to determine that the presumption of appropriate use of peremptory challenges had not been rebutted by the defendant. The defendant has not established that the judge abused his discretion. The defendant also did not establish that any particular group was underrepresented in the venire.
2. The defendant’s other issues.[13] A number of the defendant’s arguments before us were specifically addressed and rejected in Wood. We think that, in general, the reasoning of the Supreme Judicial Court in rejecting Wood’s identical arguments applies here as well.[14]
*606 a. Prosecutor’s closing argument. The defendant’s first argument concerning the prosecutor’s statement in closing regarding the relationship of the victim and one of the witnesses is substantially the same as the argument already made in Wood. The Supreme Judicial Court, in Wood, noted that the error was objected to, after which the judge instructed the jury that they were to disregard the erroneous statement. The court concluded that the error would not have made a difference in the jury’s conclusion. The court also concluded that ‘“[t]he prosecutor was attempting to rebut defense counsel’s argument that [the witness] was not credible and was motivated to lie to protect himself or the third-party killer. The prosecutor properly responded by pointing out that [the witness] had no motive to lie and that he was nearly killed in the same assault. . . . [The witness] was exhaustively cross-examined, and defense counsel ably challenged his credibility throughout the trial.” Wood, 469 Mass. at 286.
Next, the defendant complains that the prosecutor’s closing argument was improper because he commented on the credibility of the defendant, and the judge erred in declining to give a requested curative instruction.
Here, the prosecutor attacked the defendant’s credibility both by suggesting he was rehearsed, robotic, and acting during his testimony, and by comparing his testimony with that of two Commonwealth witnesses who the prosecutor suggested were more genuine and unrehearsed. ‘“The prosecution may properly attack the credibility of . . . [a] defendant, . . . and may ask the jury to compare the credibility of two opposing witnesses.” Commonwealth v. Donovan, 422 Mass. 349, 357 (1996). “Similarly, a prosecutor may argue in support of the credibility of witnesses based on their demeanor.” Commonwealth v. Miles, 46 Mass. App. Ct. 216, 222 (1999). The prosecutor referred to the cross-examination of the defendant to support his argument that the defendant would be more believable if he had not been re *607 hearsed and actually tried to remember what happened. During cross-examination, the defendant admitted to reading over his testimony from two years earlier to prepare for his current testimony. See Commonwealth v. Freeman, 430 Mass. 111, 118-119 (1999) (“A prosecutor can address, in a closing argument, a witness’s demeanor, motive for testifying, and believability, provided that such remarks are based on the evidence, or fair inferences drawn from it”). See generally Commonwealth v. Kozec, 399 Mass. 514, 521 (1987) (‘“not improper to make a factually based argument that, due to the demeanor, disclosed circumstances, and appearance of a witness, a particular witness should be believed or disbelieved”). The defendant took the stand and testified to his innocence, thus making his credibility a central issue in the case. The defendant’s testimony and demeanor could be referred to in closing argument. See Donovan, supra; Miles, supra. There was no error in the prosecutor’s arguing that the defendant was not credible.
Furthermore, where, as here, the prosecutor’s questioning of the defendant’s credibility during his closing argument was adequately grounded in the evidence at trial, the judge did not err in declining to give a curative instruction. See Commonwealth v. Carter, 475 Mass. 512, 521 (2016), quoting from Commonwealth v. Brewer, 472 Mass. 307, 315 (2015) (‘“While a prosecutor may not vouch for the truthfulness of a witness’s testimony, ... we consistently have held that, where the credibility of a witness is an issue, counsel may ‘argue from the evidence why a witness should be believed’ ” [citations omitted]). Moreover, the judge made it clear to the jury that closing arguments must always be distinguished from evidence and the jury themselves were the final arbiters of the facts and the sole judges of the credibility of the witnesses and the weight to be accorded to their testimony. See Carter, supra at 522 (“Even if there had been an appearance of impropriety in the statements, the judge carefully and clearly instructed the jury that closing arguments are not evidence and that they alone were tasked with determining credibility. These instructions offset any prejudice”).
b. Evidentiary rulings and limitations on cross-examination. The defendant argues that the judge’s evidentiary rulings and limitations on cross-examination were error and deprived him of his right to present a complete defense and cross-examine all adverse witnesses. Both Wood and the defendant objected to the judge’s evidentiary rulings and the limitations on cross-examina *608 tion. Wood made this identical argument in his appeal. The Supreme Judicial Court rejected the argument. “In a pretrial motion joined by [the defendant], [Wood] sought to introduce, through several witnesses and cross examination, evidence intended to show that a third party . . . killed [the victim], as well as evidence that the police failed to investigate certain statements . ... We discern no error in the judge’s rulings excluding much of the proffered evidence.” Wood, 469 Mass, at 274. The court concluded that certain excluded evidence would have been cumulative of other admitted evidence. Id, at 277. The court also concluded that “where the issue of an inadequate investigation was fairly before the jury, the defendant suffered no prejudice from the exclusion of the proffered evidence.” Id. at 278.
c. Purported false testimony. The defendant argues that the prosecutor knowingly used false evidence from two witnesses, which denied the defendant his opportunity for a fair trial. The Supreme Judicial Court, in Wood, however, specifically reviewed the testimony of these two witnesses both before the grand jury and at trial. The court concluded that there was no knowing use of false testimony. “Given that both witnesses’ versions of the core facts of the case remained essentially the same at all proceedings, and given that their testimony corroborated each other’s stories, the prosecution did not knowingly elicit perjury. . . . The defendant’s due process rights were not violated where the facts that went to the heart of the case remained essentially unchanged throughout the trials.” Wood, 469 Mass. at 288-289. Neither Wood nor the defendant had objected to the evidence on this basis.[15]

Judgments affirmed.

Order of the single justice denying motion to file Moffett brief affirmed.

The defendant was also convicted of armed carjacking, in violation of G. L. c. 265, § 21 A; two counts of kidnapping, in violation of G. L. c. 265, § 26; armed home invasion, in violation of G. L. c. 265, § 18C; two counts of armed robbery, in violation of G. L. c. 265, § 17; assault and battery by means of a dangerous weapon, in violation of G. L. c. 265, § 15A(b); larceny of a motor vehicle, in violation of G. L. c. 266, § 28(a); and possession of a firearm without a license, in violation of G. L. c. 265, § 10(a). The armed home invasion conviction was subsequently dismissed as duplicative.

There were four trials, two of which ended in mistrials when the jury were unable to reach a unanimous verdict. A third trial ended in a mistrial because the presiding judge became ill during the trial. Commonwealth v. Wood. 469 Mass. 266, 268 (2014).

Wood was also convicted of armed caijacking, two counts of kidnapping, armed home invasion, and larceny of a motor vehicle. His convictions on two counts of aimed robbery were dismissed as duplicative by the judge but were reinstated by the Supreme Judicial Court. Wood was acquitted of assault and battery by means of a dangerous weapon. Wood, 469 Mass. at 268 & n.3.

Wood argued, in his appeal, that if he and the defendant were both guilty of armed robbery as joint venturers, satisfying the predicate felony for felony-murder in the first degree, the defendant should also have been convicted of murder in the first degree. The Supreme Judicial Court noted that “[t]o be sure, the jury could have so found. However, the jury have the inherent power to enter into compromises in reaching their verdict.” Wood, 469 Mass. at 294.

The jury empanelment issue was not raised in Wood,

Indeed, it is unclear from the argument on appeal and a review of the trial transcript whether the defendant considered all men or only African-American men to be underrepresented.

As we noted in note 6, supra, it was unclear on the record and on appeal whether the focus of the defendant’s objection to the venire was that it was *604 comprised of too few men or only specifically two few African-American men. It is also unclear whether the defendant’s objections to the Commonwealth’s exercise of its peremptory challenges included both race and gender.

Significantly, prior to challenging this male juror, the Commonwealth had passed on challenging six male jurors, four of whom were seated and two of whom were challenged by Wood. Compare LeClair, 429 Mass. at 321.

The judge was able to observe the entire proceeding when determining whether there was a pattern of discrimination. The Commonwealth had just passed on challenging a male juror, and he was seated.

The judge would have been aware of the Commonwealth’s previously stated concerns about seating students on summer break when determining if a pattern of discrimination existed. Compare Colon, 408 Mass. at 440-441.

This prospective juror taught at a school attached to a Department of Youth Services treatment facility.

The Commonwealth used fifteen peremptory challenges consisting of four white, two black, and one Hispanic female and six white and two black males. *605 Wood and the defendant used twenty-three peremptory challenges consisting of sixteen white, two black, and one Hispanic female and four white males.

The defendant was given leave to appeal the single justice’s denial of his motion to file a Moffett brief, see Commonwealth v. Moffett, 383 Mass. 201 (1981), and that appeal was consolidated with the direct appeal. The single justice did not abuse his discretion in denying the defendant’s motion to file a Moffett brief. There is no constitutional right to hybrid representation. See Commonwealth v. Molino. 411 Mass. 149, 153 (1991) (“Hybrid representation is not prohibited; appointment of counsel in any hybrid situation is left to the discretion of the . . . judge”). “While a court may, in its discretion, permit a parly to proceed in a hybrid manner, it is not obligated to do so.” Commonwealth v. LeBaron. 464 Mass. 1020, 1020 (2013), citing Molino, supra at 152-154. Here, defense counsel filed a fifty-page brief on behalf of the defendant. The parameters of Moffett were not complied with by the defendant, or his counsel, who submitted a detailed memorandum in support of the defendant’s arguments in the Moffett brief.

Our concurring colleague notes that in addition, the Supreme Judicial Court conducted a mandatory statutory G. L. c. 278, § 33E, review of Wood’s conviction of murder in the first degree on the same record. See Wood. 469 Mass. at 295. The concurrence views this review as having a preclusive effect regarding the Batson claim of constitutional error in this appeal with respect to juror selection, see Batson v. Kentucky. 476 U.S. 79 (1986), because § 33E review is mandatory in all appeals from convictions of murder in the first *606 degree, and, when conducting such § 33E statutory review, the Supreme Judicial Court considers whether any unpreserved or unbriefed error at trial has created a “substantial likelihood of a miscarriage of justice.” Considering the defendant’s zealous advocacy regarding the alleged error in jury selection, it is not likely that the court overlooked this point. See post at 612. Having no express authority by the Supreme Judicial Court that we may, in some circumstances, consider its § 33E review of a conviction of murder in the first degree as dis-positive of a codefendant’s appeal from a conviction of murder in the second degree, we decline to consider the question.

Nor is there merit in the defendant’s argument that these witnesses were coached, and that, therefore, it was error for the prosecutor to argue otherwise in his closing.