The defendant, Quincy Butler, was convicted by a jury in the Suffolk Superior Court of murder in the second degree ( G. L. c. 256, § 1 ), and eight related offenses.[2] He argued on appeal, among other things, that he was deprived of equal protection and due process because the prosecutor engaged in racial and gender discrimination during jury empanelment. In a published opinion dated November 4, 2016, we affirmed his convictions. Commonwealth v. Butler, 90 Mass. App. Ct. 599 (2016). By order dated November 6, 2017, the Supreme Judicial Court denied the defendant's application for further appellate review without prejudice, but remanded the case to this court for reconsideration in light of Commonwealth v. Oberle, 476 Mass. 539 (2017), and Commonwealth v. Jones, 477 Mass. 307 (2017). Having reconsidered the case in light of Oberle and Jones, we now reverse.
Discussion. "Article 12 of the Massachusetts Declaration of Rights proscribes the use of peremptory challenges 'to exclude prospective jurors solely by virtue of their membership in, or affiliation with, particular, defined groupings in the community.' " Commonwealth v. Smith, 450 Mass. 395, 405 (2008), quoting from Commonwealth v. Soares, 377 Mass. 461, 486, cert. denied, 444 U.S. 881 (1979). "Peremptory challenges are presumed to be proper." Commonwealth v. Maldonado, 439 Mass. 460, 463 (2003). However, that presumption may be rebutted if "the party challenging the peremptory strike ... make[s] a prima facie showing that the strike is improper." Jones, 477 Mass. at 319. "[T]he burden of making the prima facie showing ought not be a terribly weighty one." Id. at 321 (quotation omitted). If the objecting party makes a prima facie showing, "the burden shifts to the party attempting to strike the prospective juror to provide a group-neutral reason for doing so." Id. at 319. It is then in the judge's discretion to decide whether "the proffered reason is adequate and genuine." Ibid.
Up to and including juror no. 100, the defendant joined the codefendant in four of his objections to the Commonwealth's use of peremptory challenges during jury empanelment. In all four objections, the judge declined to find a pattern, and, thus, did not seek an explanation from the Commonwealth for its use of these peremptory challenges. The question on remand is whether the judge, in light of the subsequent holdings in Oberle and Jones, abused his discretion in finding that the defendant had not made a prima facie showing that the Commonwealth's peremptory challenges were improper. Because "[a] single peremptory challenge can constitute a prima facie showing that rebuts the presumption of proper use," Commonwealth v. Curtiss, 424 Mass. 78, 79 (1997), our examination stops if merely one of the defendant's objections to the Commonwealth's use of a peremptory challenge was erroneously denied, regardless of the possibility that the Commonwealth could have "proffered an adequate and genuine race-neutral reason for [its] strike of [the] juror." Jones, 477 Mass. at 325. Such an error "constitutes structural error for which prejudice is presumed." Id. at 325-326.
Some factors to consider in determining whether the objecting party has met the prima facie showing requirement are: (1) "the number and percentage of group members who have been excluded";[3] (2) "the possibility of an objective group-neutral explanation for the strike or strikes"; (3) "any similarities between excluded jurors and those, not members of the allegedly targeted group, who have been struck"; (4) "differences among the various members of the allegedly targeted group who were struck"; (5) "whether those excluded are members of the same protected group as the defendant or the victim"; and (6) "the composition of the jurors already seated." Jones, 477 Mass. at 322. A peremptory challenge on the basis of membership in a constitutionally protected group, such as gender, is prohibited. Soares, 377 Mass. at 488-489. "Given the relative ease with which a party can make the necessary prima facie showing, we have urged judges to think long and hard before they decide to require no explanation ... for [a] challenge." Jones, 477 Mass. at 321 (quotation omitted).
We need not look further than the defendant's objection to the Commonwealth's peremptory challenge to juror no. 100, a male. The codefendant, joined by the defendant, objected, stating:
"Your Honor, respectfully I now will object on the basis of, as I expressed at the beginning of this selection, that we had a limited number of males on the jury. We had twenty-four that were seen in the group, and some forty-eight women, and this is now the fifth male of the twenty-four, and perhaps as I said the panel is becoming an all-female jury. Respectfully, your Honor, I challenge on the basis that this was done, the challenge was made on the basis of this witness's sex.... [L]ooking at the nature of the case, we've got a female victim and African-American defendant, a female Caucasian victim, and clearly there's an issue of this becoming an all-female jury, because the Commonwealth has the ability to challenge every single male."
At the time of the Commonwealth's peremptory challenge to juror no. 100, there were forty-seven women and sixteen men that were called for an individual voir dire. After the judge excused jurors for a variety of reasons, there were twenty-five women and seven men left for the parties to challenge. Although the Commonwealth used five of its peremptory challenges on women and another five on men, the percentage of men that the Commonwealth challenged was more than triple the percentage of women challenged. At this point, the Commonwealth had used its peremptory challenges on roughly twenty percent of the women and roughly seventy-one percent of the men.
The record does show that the judge was presented with a venire consisting of significantly fewer males than females. See Soares, 377 Mass. at 482. The record also shows that the Commonwealth voluntarily gave gender-neutral explanations for its challenging of two of the males. However, in addition to the Commonwealth using its peremptory challenges on five out of the seven remaining men, the jurors seated at the time of the defendant's objection concerning juror no. 100 consisted of five women and no men, and therefore the defendant would have, at that point in time, made the necessary prima facie showing. The judge was thus required to ask the Commonwealth for a gender-neutral reason for challenging juror no. 100. See Oberle, 476 Mass. at 546-547 ; Jones, 477 Mass. at 325-326. It is irrelevant, under this required procedure, that, subsequent to such a showing, the defendant challenged the next male, without explanation, or that the final composition of the jury consisted of nine females and seven males and that five of the females were white, three were Hispanic, and one was black. Of the males, four were white and three were black.[4]
Conclusion. In light of the foregoing analysis, the defendant made a prima facie showing of discrimination in his objection to the Commonwealth's use of a peremptory challenge to juror no. 100; pursuant to Oberle and Jones, the judge abused his discretion in finding otherwise and not seeking an explanation from the Commonwealth. Because the error here amounts to a structural error, the judgments must be reversed.
Judgments reversed.
Verdicts set aside.

As noted in Commonwealth v. Butler, 90 Mass. App. Ct. 599, 600 (2016), "[t]he defendant was tried with a codefendant, William Wood, on a theory of joint venture for crimes committed in the course of a botched kidnapping and robbery attempt."

"This factor can, in certain circumstances, itself suffice to make the requisite prima facie showing." Jones, 477 Mass. at 322.

"The Commonwealth used fifteen peremptory challenges consisting of four white, two black, and one Hispanic female and six white and two black males. [The defendant and his codefendant] used twenty-three peremptory challenges consisting of sixteen white, two black, and one Hispanic female and four white males." Butler, 90 Mass. App. Ct. at 604 n.12.