NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1035

COMMONWEALTH

vs.

WILLIAM A. KNOWLES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in District Court, the defendant was convicted of leaving the scene of property damage, in violation of G. L. c. 90, § 24 (2) (a).[1]  On appeal, the defendant claims that (1) the Commonwealth failed to present sufficient evidence from which the jury could find beyond a reasonable doubt that he was the operator of the vehicle that caused the damage, (2) the prosecutor erred by making improper comments in his opening statement and closing argument and by failing to correct a witness, and (3) the jury instruction on circumstantial evidence was inadequate.  We affirm.

---

[1] The defendant also was found responsible for a marked lane violation under G. L. c. 89, § 4A.

Background.  We recite the facts in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  On May 9, 2020, at approximately 5 A.M., Samuel Johnson was at home watching television when he heard a loud crash.  He looked out his front door, which faces the road, and saw that a car had collided with a minivan that was parked on the street.  Johnson described the color of the car as dark blue or black and noticed the passenger side was "smashed up."  The car appeared to be dragging something and had a flat tire on the front passenger side.  Johnson stated that the car stalled, and he watched as the operator restarted it and drove off.

Soon thereafter, several Salisbury police officers arrived at the scene of the accident.  They observed that the minivan had "pretty significant" damage to its driver's side rear corner and noticed black or blue debris on the ground.  Meanwhile, one officer, Jayson Davis, had passed a dark-colored sedan, in a parking lot "kind of by itself, just with its lights on, and running" as he drove to the scene.  The color of the debris prompted Officer Davis to return to the parking lot to investigate.  Officer Davis estimated that he arrived at the parking lot approximately twenty minutes after the accident and five minutes after he first observed the car, which was still in the parking lot with the engine running.  As he approached the

2

vehicle, Officer Davis observed that the front end of the car had "pretty serious damage."  He testified that the front tire on the passenger side of the car was flat, the entire front fender on the passenger side was missing, and the hood was damaged.[2]  There were two people in the car:  a man, later identified as the defendant, was sitting in the driver's seat, and a woman was in the passenger's seat.  The defendant was bleeding from "what appeared to be a fresh injury on the bridge of his nose," and there were drops of blood and a bloody tissue found on the driver's side of the center console.  Officer Davis asked the defendant about the damage to the car, to which the defendant responded that he was just sitting in it and did not notice anything.  The defendant claimed to have seen the car as he was walking down the road and had gotten in to get warm. When asked about the identity of the owner of the car, the defendant initially replied, "You ran the plate, you tell me," before stating that he did not know who owned the vehicle.  The defendant then suggested the vehicle was owned by a cousin.  The woman in the passenger seat "said she had just randomly been dropped off in the area, and also just happened to meet [the defendant] in that area and [got] in the vehicle."  Ultimately,

_____

[2] In addition, pieces of a fog light and a front fender found at the scene of the accident appeared to have come from the car.

the defendant and the woman were permitted to leave the area. Before they departed, the police informed the defendant that, pending further investigation, he may receive a citation in the mail, to which the defendant said, "Fine -- good luck proving I was driving."

Later, after police left and as the vehicle was being towed, the defendant and the woman returned to the parking lot and confronted the tow truck driver. The two argued and swore at the driver which prompted her to call the police; however, the defendant and the woman left before the police arrived. The police ultimately determined that the vehicle was registered to Rayenold Perkins, the defendant's cousin. Perkins testified that he did not give the defendant permission to borrow the vehicle and that neither he nor his daughter drove the car on the day of the accident.

Discussion. 1. Sufficiency of the evidence. In order to sustain a conviction of leaving the scene of property damage, the Commonwealth must prove that the defendant "(1) while operating a motor vehicle, (2) caused damage to another person's property, and (3) knowing [he] caused such damage, (4) did not stop and make known [his] 'name, residence, and register number of [his] motor vehicle.'" Commonwealth v. Martin, 98 Mass. App. Ct. 727, 732 n.9 (2020), quoting G. L. c. 90, § 24 (2) (a). The defendant contends that the Commonwealth failed to meet its

4

burden because there was no evidence that anyone saw him operating the vehicle that caused the damage. In addition, he argues that the presence of a second person in the car renders the inference that he was the operator at the time of the accident unreasonable.

We review a challenge to the sufficiency of the evidence to determine whether, after viewing the evidence in the light most favorable to the Commonwealth, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). As the defendant acknowledges, the Commonwealth was not required to present direct evidence of operation to meet its burden of proof. See Commonwealth v. Beltrandi, 89 Mass. App. Ct. 196, 199 (2016). It is well settled that "[p]roof of operation of a motor vehicle may 'rest entirely on circumstantial evidence.'" Commonwealth v. Petersen, 67 Mass. App. Ct. 49, 52 (2006), quoting Commonwealth v. Cromwell, 56 Mass. App. Ct. 436, 438 (2002). "A web of convincing proof can be made up of inferences that are probable, not necessary" (citation omitted). Beltrandi, supra.

Here, the relevant circumstantial evidence that established the defendant was the operator of the car included the following: (1) police encountered the defendant in the driver's seat of the vehicle, which had sustained damage consistent with

5

a collision, twenty minutes after the accident; (2) the defendant was bleeding from his nose, and police observed blood on the driver's side of the center console; (3) the defendant gave an implausible explanation to police as to why he was in the car; and (4) the defendant had a relationship (cousin) with the registered owner of the vehicle. This evidence was sufficient to prove beyond a reasonable doubt that the defendant was the operator of the car at the time of the accident. See Commonwealth v. Platt, 440 Mass. 396, 402 (2003) (jury could reasonably infer that defendant's fresh cuts and abrasions were consistent with accident and his operation of vehicle); Beltrandi, 89 Mass. App. Ct. at 201 n.6 (reasonable to infer defendant's operation of vehicle based on officer testimony that defendant was in driver's seat when officer approached car); Commonwealth v. Doyle, 12 Mass. App. Ct. 786, 789 (1981) (jury reasonably could have interpreted defendant's evasive and conflicting statements as attempt to mislead police and escape responsibility).

Furthermore, the presence of another person in the car did not detract from the Commonwealth's evidence. The Commonwealth was not required to prove that the defendant "had the exclusive opportunity to commit the crime" (citation omitted). Petersen, 67 Mass. App. Ct. at 53. While it was possible that the woman had been driving the car, it was both reasonable and permissible

6

for the jury to infer that the defendant was the operator of the vehicle.  See Beltrandi, 89 Mass. App. Ct. at 202 (evidence on operation was sufficient despite conflicting inferences on identity of driver).  See also Platt, 440 Mass. at 403, quoting Commonwealth v. Swartz, 343 Mass. 709, 713 (1962) ("inference of defendant's guilt from all circumstances, 'while not compelling, was at least permissible'").

2.  Alleged prosecutorial misconduct.  The defendant raises multiple claims of prosecutorial misconduct, contending that the Commonwealth made improper comments during both his opening statement and closing argument and failed to correct portions of Johnson's testimony.  As the defendant did not object to any of the challenged remarks, our review is limited to determining whether there was error and, if so, whether the error created a substantial risk of a miscarriage of justice.  See Commonwealth v. McDermott, 493 Mass. 403, 410 (2024); Commonwealth v. Boyajian, 68 Mass. App. Ct. 866, 868 (2007).

a.  Opening statement.  The defendant argues that the prosecutor misstated the evidence in his opening remarks by (1) referring to the vehicle that caused the damage as "the defendant's car,"[3] and (2) using male pronouns throughout his

_____

[3] Specifically, the prosecutor mentioned damage on "the defendant's car" or "his car," and stated that on the scene, police observed that "the defendant's engine brake lights turned off" (emphasis added).

7

opening argument.[4]  "[O]pening remarks must be judged in light of the entire [statement], the judge's instructions to the jury, and the evidence actually introduced in trial" (quotation and citation omitted).  Boyajian, 68 Mass. App. Ct. at 869.

Although the prosecutor occasionally referred to the vehicle as "the defendant's car" or "his car," he also informed the jury that Perkins was its registered owner.  In fact, Perkins testified to that effect in the Commonwealth's case-in-chief.  In addition, to the extent that the jury might infer from the prosecutor's use of male pronouns that Johnson saw a man driving the car, any such inference was dispelled when Johnson testified that he did not see the driver and could not determine the driver's gender.  Lastly, the judge instructed the jury that the parties' opening remarks were not evidence at the beginning of the trial, before closing arguments, and again during the jury charge.  In light of these circumstances, we are confident that the challenged remarks did not create a substantial risk of a miscarriage of justice.  See Commonwealth v. Miles, 46 Mass. App. Ct. 216, 221 (1999) (where misstatement

----

[4] In his opening statement, the prosecutor said:  "[Johnson] saw a car that was backing out from crashing into . . . a minivan; and as he was backing out, he then sped off in the same direction as he hit the car in.  While doing so, he observed the operator of that vehicle to have a flat tire as he was leaving the scene." (Emphasis added.)

8

was insignificant in context of entire argument, judge instructed that arguments were not evidence, and Commonwealth's case was strong, prosecutor's erroneous statement did not require reversal).

b. Closing argument. The defendant makes a similar argument with respect to the prosecutor's closing argument, that is, the prosecutor improperly suggested that the defendant owned the vehicle that caused the damage.[5] He also asserts that the prosecutor improperly characterized his behavior toward the tow truck driver as "harass[ment],"[6] despite a sustained objection to the tow truck driver's description of his conduct as such.[7] "To determine whether an alleged error in closing argument created a substantial risk of a miscarriage of justice, we consider whether the defendant objected; whether the judge's instructions mitigated the error, if any; whether the remarks went to the heart of the matter or touched upon only a collateral issue; and

---

[5] For instance, the prosecutor stated that "it would be close to impossible not to notice the extent of this type of damage to your own car," and referred to "the trail of debris leading [police] right to his vehicle" (emphasis added).

[6] The prosecutor asked, "[I]f [the defendant] had just gotten in a random car in order to warm up and was suspected hitting a vehicle and fleeing the scene, why would he harass the tow truck driver . . . while she was trying to tow the vehicle from the parking lot?"

[7] While the prosecutor also said in his opening remarks that the defendant "harassed" the tow truck driver, the defendant has not challenged this statement on appeal.

whether the remarks possibly made a difference in the jury's conclusions." Boyajian, 68 Mass. App. Ct. at 869.

We are not persuaded that the prosecutor improperly implied that the defendant owned the vehicle. Even if we were to assume otherwise, viewed in context and in light of the judge's instructions, the challenged remarks did not create a substantial risk of a miscarriage of justice. See Miles, 46 Mass. App. Ct. at 221.

Furthermore, we do not agree that the prosecutor erred when he characterized the defendant's behavior toward the tow truck driver as "harass[ment]." "Prosecutors are entitled to marshal evidence and suggest inferences that the jury may draw from it. The inferences suggested by the prosecutor need only be reasonable and possible and need not be necessary or inescapable." (Quotation and citation omitted.) Commonwealth v. Dinkins, 415 Mass. 715, 725 (1993). Here, the prosecutor's comment that the defendant "harass[ed]" the tow truck driver was a fair inference based on testimony from the tow truck driver that the defendant "confront[ed]" her and was "very rude, swearing [and], very belligerent."

c. Johnson's testimony. The defendant alleges that the prosecutor's failure to correct Johnson's repeated use of male pronouns during his direct examination in reference to the driver of the vehicle that caused the damage to the minivan

10

created a substantial risk of a miscarriage of justice.[8]  While a prosecutor may not present testimony he knows is false or allow false evidence to go uncorrected, "[m]inor inconsistencies do not [necessarily] constitute falsities . . . and they may be highlighted through cross-examination or rebuttal evidence." Commonwealth v. O'Brien, 494 Mass. 288, 302 (2024), quoting Commonwealth v. Forte, 469 Mass. 469, 491 (2014).  Much like the prosecutor's reference to a male driver when he previewed Johnson's testimony in opening remarks, discussed supra, the comments Johnson made regarding the identity of the driver were minor, and any prejudice was thoroughly mitigated by defense counsel's cross-examination.[9]

3.  Jury instruction on circumstantial evidence.  The defendant argues that the judge's instruction on circumstantial evidence was incomplete and, as a result, lowered the Commonwealth's burden of proof.  There was no objection and

_____

[8] As an example, Johnson testified that he saw "a car that had hit a van out in front of the house, and he drove off" (emphasis added).  Additionally, when asked about what happened after the collision, Johnson testified that "the car was stopped.  The guy started it again, and drove off . . . [w]hen he got in the accident, the car must have stalled, and then he started it again and drove off" (emphasis added).

[9] The defendant also argues that counsel provided him with ineffective assistance when he failed to object to these alleged errors.  In light of our conclusion that there was no reversible error, it follows that this argument fails.

therefore our review is limited to determining whether there was error, and if so, whether the error created a substantial risk of a miscarriage of justice.  See Commonwealth v. Silvelo, 486 Mass. 13, 17 (2020).  "In considering whether a [jury] charge lowers the criminal standard of proof, we consider the charge, taken as a whole, and assess the possible impact of [an] alleged error on the deliberations of a reasonable juror, i.e., whether a reasonable juror could have used the instruction incorrectly." Commonwealth v. Silva, 482 Mass. 275, 288 (2019), quoting Commonwealth v. Rosa, 422 Mass. 18, 27 (1996).  There was no error.

The judge instructed the jury largely in accordance with the Criminal Model Jury Instructions for Use in the District Court, Instruction 2.240 (direct and circumstantial evidence) (2009).[10]  However, the judge omitted the following language from the model instruction:

---

[10] The judge instructed as follows:

"Now, there are two types of evidence which you may use to determine the facts of a case, direct evidence and circumstantial evidence.  You have direct evidence where a witness testifies directly about the fact that is to be proved based on what the witness claims to have seen or heard or felt with their own senses, and the only question is 'Do I believe the witness?'

"You have circumstantial evidence where the witness cannot testify directly about the fact that is to be proved, but you are presented with evidence of other facts,

12

"In a chain of circumstantial evidence, it is not required that every one of your inferences and conclusions be inevitable, but it is required that each of them be reasonable, that they all be consistent with one another, and that together they establish the defendant's guilt beyond a reasonable doubt.

"If the Commonwealth's case is based solely on circumstantial evidence, you may find the defendant guilty only if those circumstances are conclusive enough to leave you with a moral certainty, a clear and settled belief, that the defendant is guilty and that there is no other

and you are then asked to draw reasonable inferences from them about the fact that is to be proved.

"An inference is a permissible deduction that you may make from evidence that you have accepted as believable. Inferences are things that you do every day, little steps in reasoning in which you take some known information, apply your experience in life to it, and then draw a conclusion. You may draw an inference even if it is not necessary or inescapable, so long as it is reasonable and warranted by the evidence, and all the evidence and reasonable inferences in the case together prove the defendant's guilt beyond a reasonable doubt.

"Let me give you an example of inferences and circumstantial evidence. Your daughter might tell you one morning that she sees the letter carrier at your mailbox. That is direct evidence that the letter carrier has been to your house. On the other hand, she might tell you only that she sees mail in the mailbox. That is circumstantial evidence that the letter carrier has been there. No one has seen the letter carrier, but you can reasonably infer that the letter carrier has been there since this is mail in the mailbox. The law allows either type of proof in a criminal trial.

"There are two things to keep in mind about circumstantial evidence. The first one is that you may draw inferences and conclusions only from facts that have been proved to you. The second rule is that any inferences or conclusions which you draw must be reasonable and natural, based on your common sense and experience of life."

reasonable explanation of the facts as proven.  The evidence must not only be consistent with the defendant's guilt, it must be inconsistent with his . . . innocence.

"Whether the evidence is direct or circumstantial, the Commonwealth must prove the defendant's guilt beyond a reasonable doubt from all the evidence in the case."

Instruction 2.240.  The defendant claims the judge erred and that the omission was particularly prejudicial in light of the judge's supplemental instruction on leaving the scene of an accident involving property damage.[11]

The judge had "considerable discretion in framing jury instructions, both in determining the precise phraseology used and the appropriate degree of elaboration" (citation omitted).  Commonwealth v. Alden, 93 Mass. App. Ct. 438, 444 (2018).  The judge properly instructed the jurors on the difference between direct and circumstantial evidence, the jury's right to draw reasonable inferences, and the Commonwealth's burden to prove the charge beyond a reasonable doubt.  See Commonwealth v. Newell, 55 Mass. App. Ct. 119, 131 (2002) (no error when judge failed to inform jury that proof must be beyond reasonable doubt

_____

[11] Here, the judge quoted the model instructions nearly verbatim and said, "[Y]ou may find the defendant was the operator of a motor vehicle even if no witness saw that person driving the vehicle if there is enough circumstantial evidence to prove to you beyond a reasonable doubt that the vehicle was operated, and that the defendant and no one else was the operator of that vehicle."  See Instruction 5.180 of the Criminal Model Jury Instructions for Use in the District Court, supplemental instruction 3 (circumstantial evidence of operation) (revised 2017).

14

when using circumstantial evidence because instructions were "adequately balanced" by explanations on Commonwealth's burden of proof, circumstantial evidence, and jury's right to draw inferences).  Furthermore, the judge's supplemental instruction was an accurate statement of the law and consistent with the other instructions provided.  Taken as a whole, the instructions did not lower the standard of proof or confuse the jury.

Judgment affirmed.

By the Court (Vuono, Singh & Hershfang, JJ.[12]),

Clerk

Entered:  February 20, 2025.

---

[12] The panelists are listed in order of seniority.